(No. 62420.

# BARBARA ANTIPOREK, Appellant, v. THE VILLAGE OF HILLSIDE, Appellee.

*Opinion filed May 21, 1986.—Rehearing denied December 1, 1986.*

Carl F. Schroeder, Ltd., of Wheaton (Ralph R. Hruby, of counsel), for appellant.

Stewart H. Diamond, of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago, for appellee.

Robert J. Glenn, Dennis T. Schoen and Richard B. Rogich, for amicus curiae Illinois Trial Lawyers Association.

Thomas W. Kelty, Stanley L. Morris and Brian T. Otwell, of Pfeifer & Kelty, P.C., of Springfield, for amicus curiae Illinois Municipal League.

John E. Guy, of Chicago (Lawrence R. Smith, of counsel), for amicus curiae Illinois Association of Defense Trial Counsel.

JUSTICE SIMON delivered the opinion of the court:

Local public entities are granted certain immunities from tort liability by the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (Ill. Rev. Stat. 1983, ch. 85, par. 1—101 *et seq.*), but such immunities are effectively waived where the public entity is protected by a policy of insurance, issued by an insurance "company," covering an alleged liability (Ill. Rev. Stat. 1983, ch. 85, par. 9—103(c)). The Intergovernmental Risk Management Agency (IRMA), an alternative to conventional commercial insurance, is a risk-manage-

ment pool in which only Illinois municipalities may participate. The plaintiff in this case, Barbara Antiporek, who sued individually and on behalf of her minor daughter Kimberly, contends that because the defendant village of Hillside (Hillside) is a member of IRMA, section 9—103(c) operates to waive immunities otherwise applicable to this case.

Kimberly Antiporek was injured while sledding on property owned and maintained by Hillside. Barbara Antiporek brought an action in the circuit court of Cook County alleging ordinary negligence by Hillside, and a jury returned a verdict in her favor. The village raised its immunity as an affirmative defense, but the trial court rejected that defense and entered judgment for the plaintiff. The appellate court reversed (135 Ill. App. 3d 871), unpersuaded by plaintiff's argument that IRMA is an insurance company within the meaning of the Act because it collects contributions from its members, processes and investigates claims, settles or defends against those claims, and indemnifies members for their civil liability in excess of $1,000 arising from those claims. Plaintiff was allowed leave to appeal to this court (94 Ill. 2d R. 315).

Section 9—103 provides, in pertinent parts:

"(a) A local public entity may protect itself against any liability which may be imposed on it * * * by means including, but not limited to, insurance, self-insurance, the purchase of claims services, or participation in a reciprocal insurer * * *. Insurance shall be carried with a company authorized by the Department of Insurance to write such insurance coverage in Illinois. * * *
* * *

(c) Every policy for insurance coverage issued to a local public entity shall provide or be endorsed to provide that the company issuing such policy waives any right to refuse payment or to deny liability thereto within the limits of said policy by reason of the non-liability of the in-

sured public entity *** by reason of the defenses and immunities provided in this Act." (Ill. Rev. Stat. 1983, ch. 85, par. 9—103.)

Subsection (a) distinguishes between "insurance" and "self-insurance," and we must ascribe to the word "insurance" in subsection (c) a definition—consistent with its use in subsection (a)—exclusive of self-insurance. *Chapman v. County of Will* (1973), 55 Ill. 2d 524, 530.

Although section 9—103(c) does not expressly provide that self-insurers enjoy immunity, this interpretation of that provision has received at least implicit approval from the General Assembly. In *Beckus v. Chicago Board of Education* (1979), 78 Ill. App. 3d 558, 561, the appellate court held that retention of funds by a local public entity for self-insurance does not constitute a waiver under section 9—103(c). In 1982, after the appellate court had distinguished between waiver by acquisition of insurance and nonwaiver by self-insurance, the General Assembly amended section 9—103 without making any change based upon the *Beckus* distinction; this sequence strongly indicates that the appellate court has captured our legislators' intent. See *People v. Agnew* (1985), 105 Ill. 2d 275 (strong presumption that reenactment of a statute through amendment adopts previous judicial interpretations of unamended language).

The plaintiff argues that IRMA is more analogous to an insurance company than to a system of self-insurance because participants must pay a specified premium in consideration for indemnification from IRMA on the occurrence of enumerated perils. (*Patterson v. Durand Farmers Mutual Farm Insurance Co.* (1940), 303 Ill. App. 128.) Those similarities are not controlling in this case, however, since they do not address the rationale of governmental immunity and waiver. The central issue was raised at oral argument when the plaintiff contended that if a third party is liable for claims against a

municipality, immunity is waived since tax revenues are not diverted from public functions. Plaintiff argues that, unlike self-insurance, IRMA provides indemnification from funds already expended by the municipality, so there is no reason to extend immunity to the risk management pool.

Tort immunity is intended to protect governmental funds, assuring that they will be directed and used for governmental purposes. If, however, the municipality decides to protect individuals against its negligent conduct by acquiring commercial insurance, the immunity is waived since government funds are no longer in jeopardy and immunity would inure to the benefit of private investors who have assumed the risk of insurers. (*Pippin v. Chicago Housing Authority* (1978), 58 Ill. App. 3d 1029, 1039, *aff'd* (1979), 78 Ill. 2d 204; *Rapacz v. Township High School District No. 207* (1971), 2 Ill. App. 3d 1095, 1101.) Conversely, when a municipality self-insures, it bears all risks itself, and settlements or awards are paid directly from government coffers. Section 9—103(c) does not come into play in such circumstance because there is no concern that private investors, paid to assume certain risks, will attempt to assert immunities and shirk responsibilities they have assumed.

IRMA provides a totally different type of protection—one tantamount to self-insurance within the meaning of section 9—103. Participating public entities, too small to self-insure, pool their resources and risks to provide a level of protection from potential fiscal disasters which would otherwise accompany large, nonimmune liabilities. IRMA participants have not shifted the risk to for-profit risk takers, but have instead decided to share the risk among themselves. The contract and bylaws are distinguishable from commercial policies in that they require supplemental contributions from all members—even those which have submitted no claims—if liabilities out-

strip annual contributions. A complementary provision reduces each participant's next succeeding annual contribution if claims against the pool are fewer than forecast. Funding IRMA in that manner underscores that the risks and costs of civil liability are completely internalized among its participants, so every penny paid on every claim is taken from revenue otherwise available to meet the governmental responsibilities of member municipalities. Finally, because there are no private investors or nongovernmental participants, there is no danger that private persons will receive an unconscionable profit by accepting premiums while asserting immunities to avoid claims.

IRMA is precisely the sort of joint effort sanctioned by the Illinois Constitution (Ill. Const. 1970, art. VII, sec. 10), which enables public entities to combine their resources and know-how so that they may more efficiently perform governmental operations they are too small to conduct individually. (See 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1752.) We can find no reason for allowing large public entities, with greater resources and diversification of risk, to self-insure without suffering waiver of their immunities while denying to smaller local public entities the opportunity to act in concert to provide for their own self-protection without conditioning that cooperative effort upon waiver of their immunities. "It is not the policy of the law to penalize efficiency or to favor duplication of effort. If ways of doing things have [been] replaced by more efficient and realistic methods of management, the law will look to the substance, not to the mere forms." *Association of American Medical Colleges v. Lorenz* (1959), 17 Ill. 2d 125, 129.

The substance of IRMA is pooled self-insurance, through formal agreement, of governmental entities which share the risks and costs of civil liabilities. For

that reason, Hillside's immunities have not been waived by its participation in IRMA. (Vitullo & Peters, *Intergovernmental Cooperation and the Municipal Insurance Crisis*, 30 De Paul L. Rev. 325, 340 (1981).) The trial court previously determined that the plaintiff has not proved a case sufficient to overcome those immunities, although plaintiff knew throughout the course of this litigation that Hillside was relying on the Act as an affirmative defense. There is, therefore, no reason for a new trial. The cause is remanded to the circuit court of Cook County with directions to enter judgment notwithstanding the verdict.

*Affirmed and remanded,*
*with directions.*