Ellis McGEE, Plaintiff,

v.

Wayne PARKER and City of McComb City, Mississippi, Defendants.

Civ. A. No. J90–0361(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 7, 1991.

---

Clyde Ratcliff, McComb, Miss., Gary L. Honea, Magnolia, Miss., for plaintiff.

W. Thomas Siler, Jr., Louise Harrell, Phelps, Dunbar, Marks, Claverie & Sims, Jackson, Miss., Thomas H. Walman, McComb, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants City of McComb and Wayne Parker in his official capacity to dismiss plaintiff's state law claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively, for partial summary judgment as to plaintiff's state law claims pursuant to Rule 56 of the Federal Rules of Civil Proce-

dure.[1] Plaintiff Ellis McGee has responded to the motion and the court has considered the memoranda of authorities together with attachments submitted by the parties.

On July 4, 1989, McGee was arrested inside a Circle K store in McComb, Mississippi by Wayne Parker, a McComb police officer. Plaintiff alleges in his complaint that during the course of the arrest, Parker, without provocation or justification, brutally beat him, causing him to suffer severe injuries. McGee maintains that while he was a patron in the Circle K Store, Parker approached him and began inquiring as to his identity. When he asked the reason for Parker's questions, Parker, for some cause unbeknownst to plaintiff, became enraged and beat McGee viciously with a night stick or police baton. McGee asserts that he was jailed following this incident[2] and was hospitalized two days later, on July 6, 1989, for injuries resulting from the alleged attack.

McGee initiated this action in the Circuit Court of Pike County, Mississippi on June 26, 1990. In addition to a claim that defendants deprived him of his constitutional rights in violation of 42 U.S.C. § 1983, McGee's complaint incorporates state law claims against Parker and the City for intentional and negligent infliction of emotional harm and assault and battery for which he seeks compensatory damages. He further charges that defendants are liable to him for punitive damages based on their willful, wanton, gross, callous, intentional and deliberate indifference to his safety and well being. Defendants removed the action to this court and filed the present motion seeking dismissal of all state law claims against the City and against Parker in his official capacity on the basis that they enjoy sovereign immunity as to these claims.[3]

---

1. Though Parker has been sued in both his individual and official capacities, he moves for dismissal or summary judgment only as to the claims asserted against him in his official capacity.

2. McGee claims that he does not know the charge upon which he was arrested and jailed;

defendants state that he was arrested on a charge of public drunkenness.

3. The present motion does not address plaintiff's section 1983 claim nor, as indicated *supra,* does it concern his state law claims against Parker in his individual capacity.

CITY OF McCOMB

█ The state and its political subdivisions are entitled to sovereign immunity for the performance of governmental functions absent a clear and unequivocal statutory expression of intent to waive this immunity. *Strait v. Pat Harrison Waterway Dist.*, 523 So.2d 36, 38. Relying on Miss.Code Ann. § 21–15–6, which provides in general that a purchase of general liability insurance operates to waive a municipality's immunity to the extent of such insurance, plaintiff here insists that the City has waived its sovereign immunity by virtue of its membership in the Mississippi Municipal Liabilities Plan (MMLP). Section 21–15–6, upon which McGee's position is based, provides in relevant part as follows:

> Municipalities are hereby authorized, in the discretion of the governing authorities, to purchase general liability insurance coverage, including errors and omissions insurance for municipal officials and municipal employees.

> Nothing contained herein shall be considered as a waiver of immunity in whole or in part as to any governmental function attempted or undertaken by the municipality except that where the municipality has liability insurance coverage as to any action brought against it, then such action may be maintained against such municipality, but any recovery in such action shall be limited solely to the proceeds of any such liability insurance coverage and a judgment creditor shall have recourse only to the proceeds of such liability insurance coverage.

The question with which the court is presented, therefore, is whether the City's electing to participate as a member in the MMLP is tantamount to a purchase of general liability insurance which would operate as a waiver of its sovereign immunity.

As the Mississippi Supreme Court has not yet addressed this issue,[4] this court is guided by the state's general principles of sovereign immunity as well as lower state court decisions in predicting how the state supreme court would decide the question. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). In this regard, the court observes that every court in this state which has confronted the issue has held that membership in the MMLP is not equivalent to the purchase of general liability insurance and does not operate as a waiver of sovereign immunity. *See White v. Taylor*, 775 F.Supp. 962 (S.D.Miss.1990); *C–1, A Minor v. City of Horn Lake*, 775 F.Supp. 940 (N.D.Miss.1990); *Molden v. City of Moss Point*, No. 89–5118(3) (Cir.Ct. Jackson County May 31, 1990); *Simmons v. Bryant*, No. 6–88–2376 (Cir.Ct. Forrest County May 11, 1990), *appeal docketed*, No. 90–CA–0609 (Miss. Aug. 24, 1990); *Webb v. Jackson*, No. 6113 (Cir.Ct. Newton County Feb. 13, 1990); *Dean v. Town of Moorehead*, No. 13,666 (Cir.Ct. Sunflower County Feb. 1, 1990). The most thorough consideration of the question was in the *Horn Lake* case. That court, mindful of the state court decisions on the subject and persuaded by the purpose of the MMLP as set out in the by-laws of the corporation, as well as an express disclaimer of waiver also set forth in the by-laws, determined that the Mississippi Supreme Court would not view a municipality's membership in the MMLP as a waiver of sovereign immunity. This court is similarly persuaded.

The MMLP is a non-profit corporation whose purpose, as reflected in its charter of incorporation, is

---

**4.** The court notes that the issue of whether membership in the MMLP amounts to a waiver of immunity is currently pending before the Mississippi Supreme Court in the case of *Simmons v. Bryant*, No. 6–88–2376 (Cir.Ct. Forrest County May 11, 1990), *appeal docketed*, No. 90–CA–0609 (Miss. Aug. 24, 1990). Plaintiff asks that this court stay its decision until the Missis-

sippi Supreme Court renders a decision in *Simmons*. However, this is not a situation in which abstention is warranted. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

to formulate, develop and administer a program of self-insurance for Mississippi's municipalities, to obtain a lower cost for liability coverage and to operate a loss control program to minimize exposure and risk to the municipalities.

The MMLP's by-laws also describe these corporate objectives, and further express that plan participation is not intended to waive any immunity:

> All funds contributed to the Corporation are public funds of municipalities of the State of Mississippi. In contributing said funds to the Corporation, the intent of the members is to create a reserve fund for the payment of claims which are not insured and which are not covered by immunity under Chapter 46, Title 11, Miss.Code Ann., 1972, as amended. It is not intended that any immunity of any member of the Corporation or its agents or employees is waived by creation of such reserves since the reserves are not intended to pay any claims other than those not covered by immunity or by a policy of insurance.

> .        .        .        .        .

> The Corporation and the Plan operated by the Corporation are not intended to operate as an insurance company, but rather are intended to be the mechanisms by which each municipality provides reserves for itself and its employees in their official capacities for uninsured liability claims not covered by immunity or by a policy of insurance.

The program established by the MMLP is one of self-insurance for municipalities. Only municipalities are eligible for participation in the MMLP, and the funds which are contributed to the MMLP, as expressed in the by-laws, are paid exclusively from the funds of the participating municipalities; the amount of each municipality's contribution is calculated according to the municipality's population. And as Patrick A. Dunne, executive director for the Mississippi Municipal Association, explains in his affidavit, to the extent that payment of claims exceeds its contributions to the reserve fund, a member municipality is required to make additional contributions. The loss experience of each municipality is evaluated at least once a year "in order to maintain as nearly as possible an equitable and reasonable administration of the Plan as applied to each Municipality;" a municipality's experience rating could lead to an increase or decrease in the annual contribution required of that municipality.

As is seen from the foregoing, the by-laws unequivocally recite that the purpose of the MMLP is "to create a reserve fund for the payment of claims *which are not insured and which are not covered by immunity*" (emphasis supplied); this reserve fund is a self-insurance fund for the exclusive use of member municipalities. Moreover, the by-laws explicitly disavow any intention that the creation of this reserve fund to satisfy certain claims against member municipalities operate as a waiver of immunity. Sovereign immunity is also preserved in the definitional section of the MMLP policy, which defines "tort claims liability" as "such liability of the political subdivision as has been identified under a tort limitation of sovereign immunity law as being the liability of the political subdivision."

Preservation of a participant's immunity, as is clearly envisioned by the MMLP, is consistent with sovereign immunity's goal of preserving the integrity of public funds.[5] As is described above, funding for the MMLP "is completely internalized among its participants, so every penny paid on every claim is taken from revenue otherwise available to meet the governmental responsibilities of member municipalities." *Antiporek v. Village of Hillside,* 114 Ill.2d 246, 102 Ill.Dec. 294, 499 N.E.2d 1307 (1986). In *Antiporek,* which was cited by the *Horn Lake* court as supportive of its holding, the Illinois Supreme Court held that a municipality's participation in a risk management pool, The Intergovernmental Risk Management Agency, did not constitute a waiver of sovereign immunity under a statute similar to section 21–15–6. The

---

5. To date, Mississippi has remained steadfast in its allegiance to the sovereign immunity doctrine. *See, e.g., Grantham v. Mississippi Dept. of Corrections,* 522 So.2d 219 (Miss.1988).

court there concluded that the IRMA, the Illinois counterpart to the MMLP, was not analogous to commercially obtained insurance but rather was in substance "pooled self-insurance, through formal agreement, of governmental entities which share the risks and costs of civil liabilities." 102 Ill.Dec. at 296, 499 N.E.2d at 1309. The court explained that the retention by the participating municipalities of their immunity was justified by the rationale underlying governmental immunity and waiver:

> Tort immunity is intended to protect governmental funds, assuring that they will be directed and used for governmental purposes. If, however, the municipality decides to protect individuals against its negligent conduct by acquiring commercial insurance, the immunity is waived since government funds are not longer in jeopardy and immunity would inure to the benefit of private investors who have assumed the risk of insurers.... *Conversely, where a municipality self-insures, it bears all risks itself, and settlements or awards are paid directly from government coffers.*

*Id.* 102 Ill.Dec. at 295, 499 N.E.2d at 1308 (emphasis supplied). In this court's opinion, this rationale is applicable to the MMLP.

Given the clarity with which the by-laws speak, and consistent with the purpose of sovereign immunity, this court concludes, as has each court to have previously considered this question, that the Mississippi Supreme Court would hold that participation in the MMLP does not amount to a purchase of general liability insurance which would function to waive sovereign immunity.

PARKER

■ Parker asserts that as to the claims against him in his official capacity, he is entitled to sovereign immunity to the same extent as the City. His argument raises the issue of whether the suit against him in his official capacity is considered equivalent to a suit against the City. The cases cited by defendants relating to official capacity suits interpret the breadth of Eleventh Amendment immunity, not state law immunity. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In *Kentucky v. Graham*, the Supreme Court, noting the existence of confusion among lower courts concerning the distinction between individual- and official-capacity actions, explained that a suit against a public official in his individual capacity is one which seeks to impose against the official personal liability for damages resulting from his actions under color of law, whereas the naming of a public official as a defendant in his official capacity is simply another way of pleading an action against the entity of which the officer is an agent. *Id.* at 165–66, 105 S.Ct. at 3104–05. From an immunity standpoint, "an official in a personal capacity action may ... assert personal immunity defense," such as qualified immunity, whereas "[t]he only immunities that can be claimed in an official capacity action are forms of sovereign immunity that the entity may possess." *Id.* at 166, 105 S.Ct. at 3105.

Mississippi law provides public officials a qualified immunity pursuant to which suits against them are barred if they were exercising discretionary as opposed to ministerial authority, and did not exceed the bounds thereof. *Grantham v. Mississippi Dept. of Corrections*, 522 So.2d 219, 224–25 (Miss.1988). Under the explanation offered by the United States Supreme Court in *Kentucky v. Graham*, this qualified immunity would be available as a defense only in individual capacity actions; the public official sued in his official capacity would, in contrast, be entitled to whatever sovereign immunity is afforded the entity of which he is an agent. Generally speaking, however, the Mississippi Supreme Court has not taken care in its decisions to clarify a distinction between individual- and official-capacity suits and has instead typically referred in general terms to "public official immunity." *See, e.g., McFadden v. State*, 542 So.2d 871 (1989) (describing ministerial and discretionary authority as official capacities of public official without discussion of capacity or capacities in which defendant was sued); *Webb v. Lincoln County*, 536 So.2d 1356 (Miss.1988) (discussing qualified immunity of individual de-

fendants without indicating capacity in which defendants were sued); *Mental Health and Retardation Center v. Isaac*, 523 So.2d 1013 (Miss.1988) (same); *Marshall v. Chawla*, 520 So.2d 1374 (Miss.1988) (same); *Grantham v. Mississippi Dept. of Corrections*, 522 So.2d 219 (Miss.1988) (same). Nevertheless, while this court has been unable to discern an explicit affirmation by the Mississippi Supreme Court that the state's sovereign immunity law bars suits against public officials sued in their official capacities, when suit against the sovereign would be barred, that notion is at least implicit in cases emanating from the state court. *See, e.g., Richardson v. Rankin County School Dist.*, 540 So.2d 5 (Miss.1989) (discussing sovereign immunity and affirming lower court's dismissal of suit against school superintendent and board of trustees sued in their official capacities; school bus driver who had been sued in her individual capacity was not dismissed). The Fifth Circuit has also recognized a distinction between official- and individual-capacity suits under Mississippi law. *See Sorey v. Kellett*, 849 F.2d 960, 963 (5th Cir.1988) (Mississippi public officials entitled to qualified immunity when sued in individual capacities); *Karpovs v. State of Mississippi*, 663 F.2d 640, 647 (5th Cir.1981) (public official sued in individual capacity for acts arising out of employment afforded partial immunity extending to his discretionary acts). The court concludes that the suit against Parker in his official capacity is the equivalent of a suit against the City of McComb and is, therefore, barred by the immunity afforded the City.[6]

Based on the foregoing, the court concludes that defendants' motion for summary judgment as to plaintiff's state law claims against the City of McComb and against Wayne Parker in his official capacity should be granted, and it is so ordered.

ORDERED.

[6]. Whether Parker is entitled to qualified immunity in his individual capacity is not an issue presently before the court for consideration.