# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-IA-01590-SCT

*MISSISSIPPI MUNICIPAL LIABILITY PLAN*

*v.*
*FRANK E. JORDAN, STUART LOVE, MARY ANN*
*HILL AND MANUEL KEYES*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/24/2001 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | LAWRENCE CARY GUNN, JR. |
| | GARY E. FRIEDMAN |
| ATTORNEYS FOR APPELLEES: | DAVID GARNER |
| | JOLLY W. MATTHEWS |
| | OBY THOMAS ROGERS |
| | DAVID L. SULLIVAN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED- 12/31/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Three injured plaintiffs sought compensation in the Chancery Court of Smith County, Mississippi, for injuries sustained in a motor vehicle accident where a Town of Taylorsville police patrolman was allegedly the negligent party.  The chancery court found that the municipality was liable only for $ 50,000  under the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2002 & Supp. 2003).  However, the chancellor further found that the Mississippi Municipality Liability Plan ("MMLP") could be held liable in excess of $50,000 because the policy between the city and plan provided for maximum

coverage of $500,000. Moreover, the chancellor determined that the policy was ambiguous. We disagree and find the chancellor erred.

¶2.     We also, by plain error, find that the Chancery Court of Smith County was without subject matter jurisdiction to hear this case. Moreover, we find that Section 147 of the Mississippi Constitution does not prohibit us from reversing on jurisdictional grounds since there has been no final judgment. Accordingly, we reverse and remand for a transfer to the Circuit Court of Smith County for proceedings consistent with this opinion.

**FACTS**

¶3.     On October 7, 1996, the motor vehicle operated by Joann Jordan (Jordan) was crossing Highway 37 in the Town of Taylorsville (Taylorsville) when it was struck by a Taylorsville police car driven by officer Dennis Jones (Jones) who was on duty and acting in his official capacity. As a result of the accident, Jordan died, and her passenger Mary Ann Hill (Hill) was injured. At the time of the accident, Jones was transporting Manuel Keyes (Keyes) to the town jail. Keyes was also injured in the accident.

¶4.     On January 15, 1997, Jordan's husband, Frank E. Jordan, filed a wrongful death action against Jones, Taylorsville, and Mayor J.W. Walker (Walker) in the Chancery Court of Smith County.[1] Jordan claimed that Jones negligently operated his vehicle at a high rate of speed and drove his vehicle into the side of Jordan's car. Jordan alleged that Jones was negligent by

---

[1]  No other complaints are contained in the record for the other plaintiffs; Stuart Love, Hill, and Keyes. The record only contains the answers and defenses of all parties to the complaint for interpleader, their responses to the motion for summary judgment, and their replies to asserted counterclaims. The record also contains a motion to join as a party the estate of Joann F. Jordan; which essentially amounts to the joinder of Love as a party as he is the son of Jordan. This motion was granted by the chancellor.

driving at an excessive rate of speed, failing to maintain a proper lookout, failing to observe Jordan's vehicle, failing to stop his vehicle to avoid the resulting collision with Jordan, failing to take action to avoid the accident, failing to keep control of his vehicle, failing to operate within the posted speed limit, and all other negligence to be established at trial. Jordan further alleged that Taylorsville and Walker were liable for failure to train the employee and properly supervise his actions. The complaint demanded damages of $750,000. ¶5. Soon thereafter, Taylorsville filed a complaint for interpleader pursuant to Rule 22 of the Mississippi Rules of Civil Procedure in the Chancery Court of Smith County.[2] Therein, Taylorsville asserted that the court should receive and maintain the sum of $50,000 from the Mississippi Municipal Liability Plan (MMLP) and thereafter determine the claims of all of the injured parties; thereby discharging it from any further liability. Pursuant to Rule 67 of the Mississippi Rules of Civil Procedure, the chancellor on January 21, 1997, issued an order directing the court clerk to accept the $50,000 and deposit said sum in a federally insured bank or savings and loan association until a determination has been made as to the injured parties' claims.

¶6. Taylorsville, Jones, and MMLP moved for summary judgment claiming that since the sum of $50,000 had been deposited into the registry of the court there no longer existed any dispute as to material facts as to them. The affidavit of Jack Combes (Combes), claim representative for MMLP, was also presented to the court. Therein, Combes attested that Jones was in fact acting within his official capacity as a Taylorsville officer at the time of the

---

[2] Taylorsville waived any claims as to the denial of liability up to $50,000 and waived any arguments regarding notice sufficiency as required by the Mississippi Tort Claims Act.

accident and that Taylorsville is a member of MMLP with coverage of $50,000, pursuant to Miss. Code Ann. § 11-46-15.

¶7.	Hill, Jordan, Keyes, and Stuart Love (Love) (collectively "Plaintiffs") filed separate responses to the motion for summary judgment claiming that Taylorsville had a liability policy with maximum limits of $500,000. Ultimately, on May 5, 1997, the chancellor found that Taylorsville should be granted summary judgment since the only amount of liability it was subject to was the $50,000 which had been paid into court. However, the chancellor denied summary judgment for Jones and MMLP as he found that material issues of fact existed with regards to the maximum policy limits and possible recovery afforded by the MMLP. The chancellor found conflicting wording in the policy declaration and the section of the comprehensive coverage document which pertains to limits on liability. The MMLP Bylaws provide, in pertinent part:

> The Mississippi Municipal Liability Plan (hereinafter referred as the "Corporation") was incorporated under the Mississippi Nonprofit Corporation Act on March 4, 1987. The general objectives of the Corporation are to formulate, develop and administer a program of **self-insurance** for municipalities in the State of Mississippi, to offer lower costs for liability coverage and to operate a loss control program to minimize exposure and risks to the municipality. . . .
> All funds contributed to the Corporation are public funds from municipalities of the State of Mississippi. **In contributing said funds to the Corporation, the intent of the members is to create a reserve fund for the payment of claims which are not insured and which are not covered by immunity under Chapter 46, Title 11, Miss. Code Ann., 1972, as amended. It is not intended that any immunity of any member of the Corporation or its agents or employees is waived by the creation of such reserves since the reserves are not intended to pay any claims other than those not covered by immunity or by a policy of insurance.**
> The Corporation, and the Plan operated by the Corporation shall consist of members which are municipalities authorized under Section 11-46-17, Miss. Code Ann. 1972, as amended, to become self-insurers and enter into inter-local

4

agreements with other municipalities to provide liability protection for the municipalities, their officers and employees while acting in their official capacities. . . . The Corporation and the Plan operated by the Corporation are not intended to operate as an insurance company, but rather are intended to be the mechanisms by which each municipality provides reserves for itself and its employees in their official capacities for uninsured liability claims not covered by immunity or by a policy of insurance. . . .

(emphasis added). The MMLP Insurance Declaration provides in relevant part:

## LIMIT OF LIABILITY

$500,000 per occurrence as limited and defined herein. **This expressly does not waive any limitation included in the Sovereign Immunity Exclusion** and Related Liability limitation. . . .

(emphasis added). The MMLP Comprehensive Coverage Document states in relevant part:

## MISSISSIPPI MUNICIPAL LIABILITY PLAN

The Mississippi Municipal Liability Plan (hereinafter called the "Liability Plan" or "Plan" is a reserve fund established by the members for the payment of claims which are not **insured** or which are not covered by any governmental or sovereign immunity or limitation of liability created by or existing under the common law, court decision, statute or regulation. It is not intended that any governmental or sovereign immunity or limitation of liability of any member of the Plan or agents or employees is waived by the creation of such reserves since the reserves are not intended to pay claims other than those not covered by immunity or by a policy of insurance. . . .

## PLAN AGREEMENT

The Liability Plan will pay on behalf of the **Named Insured** all sums which the **Named Insured** shall become **legally obligated to pay** as **damages** because of:
Part I – General and Automobile Liability
  Coverage A – Bodily Injury Liability
  Coverage B – Property Damage Liability
Part II – Errors and Omissions Liability
  Coverage C – Law Enforcement Liability
  Coverage D – Public Officials Liability
to which this coverage document applies; caused by an **Occurrence** under Part I or **Wrongful Act** under Part II, and occurring within the Inter-Local Agreement Territory as defined in the DEFINITIONS . . .

5

**DEFINITIONS**

When used in this Mississippi Municipal Liability Plan Coverage Document and the Inter-Local Agreement: . . .

> **OCCURRENCE**, with respect to bodily injury and property damage, means an accident, including continuous or repeated exposure to substantially the same general harmful condition....

**GENERAL AND AUTOMOBILE LIABILITY**

**I.      COVERAGE A – BODILY INJURY LIABILITY
         COVERAGE B – PROPERTY DAMAGE LIABILITY**

The Liability Plan will pay on behalf of the **insured** all sums which the **insured** shall become **legally obligated to pay** as **damages** arising out of an **occurrence** that takes place during the Mississippi Municipal Liability Plan period because of:

> Coverage A – **Bodily Injury**
> Coverage B – **Property Damages**

to which this Plan applies as stated in the Inter-Local Agreement.

**II.  LIMIT OF LIABILITY**

The Liability Plan's limit of liability is the limit stated in the Declarations and applies per **occurrence** for each coverage separately and for all coverages combined in the coverage document. Such limit is subject to the Sovereign Immunity exclusion and Related Liability Limitation. This limit applies regardless of the number of:

> (a) **Insureds,**
> (b) Claims made or **suits** brought, or
> (c) persons or organizations making claims or bringing **suits**.

(emphasis in original).

¶8.     On June 19, 1997, Mississippi Farm Bureau Mutual Insurance Company (Farm Bureau) filed a motion for leave to intervene claiming that as the liability insurer of Jones it had an interest in the litigation and sought intervention so as to protect that interest. Ultimately, an agreed order of intervention was executed between the parties. Farm Bureau then filed an itemization of facts with the court and a motion for summary judgment. In support of this

6

motion, Farm Bureau filed with the Court a transcript of the testimony given by Jones to the claims adjuster, a copy of the auto policy in question, and a copy of the accident report. In his statements to the claims adjuster, Jones acknowledged that he was speeding and going 67 mph in a 55 mph zone. Thereafter, Love filed a motion to amend his complaint wherein he named Farm Bureau as a defendant and sought $1 million in additional damages.

¶9. On September 24, 1997, the chancellor entered an opinion and order finding that the coverage provided under the MMLP was for the maximum amount of $500,000, not $50,000. The MMLP filed a motion to amend findings by the court, to alter or amend the opinion and order of the court, and for relief from judgment of order arguing that the chancellor had erred in finding the maximum limits of the policy were $500,000 instead of $50,000.

¶10. Hill and Jordan filed a motion to withdraw the interpleader funds. These motions were denied. Hill and Jordan also filed a response to MMLP's motion to amend findings. On February 4, 1998, the chancellor denied MMLP's motion to amend. On June 12, 2000, Jones filed a motion to dismiss claiming immunity from personal liability under the Mississippi Tort Claims Act (MTCA).

¶11. On July 2, 2001, the chancellor ordered the parties to submit to mediation. Thereafter, the chancellor entered an order establishing the percentage of disbursement and granting interlocutory appeal to all parties to this Court. This Court granted the MMLP's Petition for Interlocutory Appeal. MMLP raises the following issue on appeal:

> I. **WHETHER A SELF-INSURED POOL FOR MUNICIPALITIES CREATED BY THE MISSISSIPPI TORT CLAIMS ACT CAN BE INDEPENDENTLY LIABLE TO A PLAINTIFF AND FOR A GREATER AMOUNT THAN THE MUNICIPALITY.**

7

**DISCUSSION**

¶12.     This case was filed in the Chancery Court of Smith County.  The chancery court specifically found that it had jurisdiction over the subject matter involved in this wrongful death tort action.   Jurisdiction is a question of law that we review de novo.  ***K.M.K. v. S.L.M. ex rel. J.H.***, 775 So.2d 115, 117 (Miss. 2000).

¶13.     Mississippi chancery courts enjoy limited jurisdiction.  ***S. Leisure Homes, Inc. v. Hardin***, 742 So. 2d 1088, 1090 (Miss. 1999). The Mississippi Constitution provides:

> The chancery court shall have full jurisdiction in the following matters and cases, viz.:
> (a) All matters in equity;
> (b) Divorce and alimony;
> (c) Matters testamentary and of administration;
> (d) Minor's business;
> (e) Cases of idiocy, lunacy, and persons of unsound mind;
> (f) All cases of which the said court had jurisdiction under the laws in force when this Constitution is put in operation.

Miss. Const. art. 6, § 159.  The Constitution grants chancery courts additional jurisdiction in some cases involving real property.  *Id.* § 161.  Furthermore, in some cases, the circuit and chancery courts enjoy concurrent jurisdiction.  *Id.* § 161.  While a chancery court may grant judgments for compensatory and even punitive damages, its jurisdiction must first attach.  ***S. Leisure Homes,*** 742 So. 2d at 1090.  In contrast, the circuit court has "original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court, and such appellate jurisdiction as shall be prescribed by law."  Miss. Const. art. 6 § 156.  We find that the Chancery Court of Smith County did not have subject matter jurisdiction over this MTCA action.  ***City of Ridgeland v. Fowler***, 846 So. 2d 210, 214 (Miss. 2003); ***Lawrence County Sch. Dist. v. Brister***, 823 So. 2d 459 (Miss. 2001).

8

¶14. In addition, the Mississippi Constitution states:

> No judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common-law jurisdiction; but if the Supreme Court shall find error in the proceedings other than as to jurisdiction, and it shall be necessary to remand the case, the Supreme Court may remand it to that court which, in its opinion, can best determine the controversy.

Miss. Const. art. 6, § 157. This Court has recognized that where a final judgment has been rendered, we are without power to reverse for lack of jurisdiction pursuant to Section 147. *U.S. Fidelity & Guar. Co. v. Estate of Francis ex rel. Francis*, 825 So. 2d 38, 45 (Miss. 2002). However, in considering an interlocutory appeal, it is permissible for this Court to reverse for a trial court's lack of jurisdiction because, absent a final judgment, the provisions of Section 147 do not bar reversal on jurisdictional grounds. *S. Leisure Homes,* 742 So. 2d at 1091. *Cf. Francis*, 825 So. 2d at 46. In other words, "it is appropriate to seek permission to bring an interlocutory appeal to address the issue of subject matter jurisdiction in order to prevent a final resolution of the case in an inappropriate forum." *Francis*, 825 So. 2d at 46. There has been no final judgment in this case. However, MMLP failed to raise the jurisdictional defect before the court below.

¶15. Normally, where a party fails to raise an issue before the trial court, we are procedurally barred from considering that issue. *Southern v. Miss. State Hosp.*, 853 So.2d 1212, 1214-15 (Miss. 2003). However, under M.R.A.P. 28(a)(3), "the [C]ourt may, at its option, notice a plain error not identified or distinctly specified." We have held that the plain error rule becomes operable when the appellant "(1)... has failed to perfect his appeal and (2) when a substantial right is affected." *State Highway Comm'n of Mississippi v. Hyman*, 592 So.2d 952, 957

9

(Miss. 1991). In ***Hyman***, this Court concluded that because $60,000 of State money was involved in the appeal, a substantial right was affected by the trial court's error in admitting certain testimony at trial. ***Id.*** Furthermore, we have recognized that "this Court of its own motion may, as it should, consider a jurisdictional issue even though not assigned by the parties." ***Sanford v. Board of Supervisors, Covington County***, 421 So.2d 488, 490 (Miss. 1982). *See also* ***Home Ins. Co. v. Watts***, 229 Miss. 735, 753, 93 So. 2d 848, 850 (1957) (holding that "question of jurisdiction may be raised at any stage of the proceedings, and even by the Court of its own motion"); ***McCaskill v. Little***, 214 Miss. 331, 335, 58 So.2d 801, 802 (1952) (holding that jurisdictional question, although not raised by the appellant, was so patent that Court could not ignore it). Moreover, this Court has held:

> Our appellate jurisdiction extends to cases and not just issues. While we normally limit our review to specific issues presented by the parties, that limitation is one of expedition and not jurisdiction, else how our familiar plain error rule...Interlocutory appeals are no different. In the matter now before the Court, we will decide the issue raised by the Petition for Interlocutory Appeal and reach the merits of the case.

***Pub. Employees Ret. Sys. of Mississippi v. Hawkins***, 781 So. 2d 899, 901 (Miss. 2001).

¶16. Here, we hold that the chancery court's lack of subject matter jurisdiction is plain error requiring reversal. MMLP did not perfect its appeal of the jurisdictional issue because it failed to raise that issue before the chancery court. Moreover, we find that a substantial right is affected in the case sub judice. As in ***Hyman***, the "substantial right" affected here is a monetary interest - specifically, $450,000 is at issue in this appeal. Pursuant to our holding in ***Hyman***, it is appropriate for us to reverse on jurisdictional grounds despite MMLP's failure to raise the jurisdictional defect before the chancery court. Moreover, our cases stand for the

10

proposition that jurisdiction may be challenged at any stage of the proceedings, even by this Court's own motion.

¶17. In sum, we reverse the judgment in this case since we find that the chancery court was without subject matter jurisdiction; Section 147 of the Mississippi Constitution does not prohibit us from reversing on jurisdictional grounds; and the chancery court's lack of subject matter jurisdiction is plain error requiring reversal. Although we reverse on jurisdictional grounds, we nevertheless address the merits of this appeal to assist the Smith County Circuit Court on remand.

¶18. Jordan argues that MMLP has failed to show any manifest error by the learned chancellor below. Further, Jordan asserts that the MMLP contract is ambiguous; therefore, the contract should be construed against MMLP, the drafter, and in favor of Jordan. However, MMLP contends that Mississippi does not allow "direct action" suits. Moreover, MMLP argues that it is liable only to the extent allowed under Miss. Code Ann. § 11-46-15, i.e., $ 50,000.

¶19. MMLP first refers this Court to our decision in *Westmoreland v. Raper*, 511 So. 2d 884 (Miss. 1987), for the contention that Mississippi does not recognize "direct action suits." It is true that our decision in *Westmoreland* prohibited direct actions against insurance companies. *Jackson v. Daley*, 739 So.2d 1031, 1038 (Miss. 1999). However, we subsequently overruled *Westmoreland* in *State Farm Mut. Auto. Ins. Co. v. Eakins*, 748 So. 2d 765 (Miss. 1999). In the place of *Westmoreland* and similar cases, "we held that under Rule 57 of the Mississippi Rules of Civil Procedure, an insurance company may be named as a party to an action for the purpose of seeking declaratory judgment on the question of

coverage." ***Jackson v. Daley***, 739 So.2d at 1038. Rule 57 was amended in 2000 to modify

the rule which prohibited any type of direct action by an injured party against an insurer.

***Poindexter v. S. United Fire Ins. Co.***, 838 So.2d 964, 967 (Miss. 2003). Rule 57 states in

pertinent part:

> A contract may be construed either before or after there has been a breach
> thereof. Where an insurer has denied or indicated that it may deny that a contract
> covers a party's claim against an insured, that party may seek a declaratory
> judgment construing the contract to cover the claim.

M.R.C.P. 57(b)(2). In ***Poindexter***, 838 So.2d at 968, we concluded that an insurance company

was not a proper party to the lawsuit at issue because the insurance company had not denied

coverage:

> While the amended Rule 57 permits an injured party to seek a declaratory
> judgment of coverage, it does not permit an injured party to join an insurance
> company that has admitted coverage. Southern United has never disputed
> coverage; the extent of the coverage is an issue that must first be resolved by the
> trial court in Poindexter's action against Fields.
>
> * * *
>
> Declaratory judgments are meant to "serve a useful purpose in clarifying and
> settling the legal relations in issue" and "afford[ing] relief from the uncertainty,
> insecurity, and controversy giving rise to the proceeding." Miss. R. Civ. P. 57
> cmt. No uncertainty or lack of clarity exists with regard to coverage, so
> declaratory judgment is inappropriate.

In other words, because it did not deny coverage under the policy, the insurance company was

not a proper party to the suit.

¶20.    Here, we are faced with a similar situation. Under Rule 57, the MMLP would be a

proper party to this action only if it denied coverage under the policy issued to Taylorsville.

In its brief, MMLP states:

12

> Because of the serious nature of the damages and because the policeman's liability for the accident seemed debatable, the Mississippi Municipal Liability Plan **decided not to contest liability for the claim** and interpled the statutory liability limit of $50,000 into the registry of the Chancery Court and sought a discharge from liability for the town.

(emphasis added). Thus, as is readily apparent, MMLP does not deny that Jordan's claim is covered under the policy it issued Taylorsville. Because it does not dispute coverage under the policy, MMLP is not a proper party to this suit pursuant to our holding in *Poindexter*.

¶21. Next, MMLP asserts that the chancellor erred in holding that MMLP could be liable for the policy limits of $500,000. Statutory interpretation is a question of law that this Court reviews de novo. *Roberts v. New Albany Separate Sch. Dist.*, 813 So. 2d 729, 730-31 (Miss. 2002). We are therefore not required to defer to the trial court's ruling. *Id.* at 731. In addition, we review "errors of law, which include the proper application of the Mississippi Tort Claims Act, de novo." *Fairley v. George County*, 800 So. 2d 1159, 1162 (Miss. 2001).

¶22. Under the Mississippi Tort Claims Act ("MTCA"), the State and its subdivisions are amenable to suit, but only to a limited extent:

> In **any claim** or suit for damages against a governmental entity or its employee brought under the provisions of this chapter, the liability **shall not exceed** the following for all claims arising out of a single occurrence for all damages permitted under this chapter:
> (a) For claims or causes of action arising from acts or omissions occurring **on or after July 1, 1993, but before July 1, 1997**, the sum of **Fifty Thousand Dollars** ($50,000.00).

Miss. Code Ann. § 11-46-15 (Rev. 2002) (emphasis added). The MTCA also mandates that governmental entities are required to participate in some type of risk-sharing arrangement, either by self insurance, liability insurance, or insurance "pooling":

13

(3) All political subdivisions shall, from and after October 1, 1993, obtain such policy or policies of insurance, establish such self-insurance reserves, or provide a combination of such insurance and reserves as necessary to cover all risks of claims and suits for which political subdivisions may be liable under this chapter; except any political subdivision shall not be required to obtain pollution liability insurance. **However, this shall not limit any cause of action against such political subdivision relative to limits of liability under the Tort Claims Act.** Such policy or policies of insurance or such self- insurance may contain any reasonable limitations or exclusions not contrary to Mississippi state statutes or case law as are normally included in commercial liability insurance policies generally available to political subdivisions. All such plans of insurance and/or reserves shall be submitted for approval to the board. The board shall issue a certificate of coverage to each political subdivision whose plan of insurance and/or reserves it approves in the same manner as provided in subsection (2) of this section.

(4) Any governmental entity of the state may purchase liability insurance to cover claims in excess of the amounts provided for in Section 11-46-15 and may be sued by anyone in excess of the amounts provided for in Section 11-46-15 to the extent of such excess insurance carried; provided, however, that the immunity from suit above the amounts provided for in Section 11-46-15 shall be waived only to the extent of such excess liability insurance carried.

(5) Any two (2) or more political subdivisions are hereby authorized to enter into agreement and to contract between and among themselves for the purpose of pooling their liabilities as a group under this chapter. Such pooling agreements and contracts may provide for the purchase of one or more policies of liability insurance and/or the establishment of self-insurance reserves and shall be subject to approval by the board in the manner provided in subsections (2) and (3) of this section.

Miss. Code Ann. § 11-46-17 (Rev. 2002). The policy at issue in this case was created pursuant to Section 11-46-17(5) above.

¶23. It is necessary for us to first determine the nature of the MMLP policy at issue here. This determination is essential to our analysis because the applicability of certain MTCA provisions depends on proper classification of the policy. We have held that participation in the MMLP is not the same as obtaining liability insurance. *Morgan v. City of Ruleville*, 627 So.2d 275, 280 (Miss. 1993). Further, we have characterized MMLP as a "risk-sharing pool."

*Id*. Agreeing with the conclusion reached by Mississippi's federal courts, we have held that the MMLP is "self-insurance, insufficient to waive sovereign immunity." *Id.* at 281. Having classified the MMLP policy, we now consider whether MMLP may be held liable for $500,000, the limits of the policy it issued Taylorsville, despite the applicable MTCA limit on municipal tort liability.

¶24.    It is clear that the Legislature envisioned situations in which governmental entities could be held liable for more than the statutory liability limit. However, this is simply not one of those situations. Under Miss. Code Ann. § 11-46-17(4), if a political subdivision purchases liability insurance, it can be sued for amounts exceeding the applicable statutory liability limit. However, the governmental entity is liable only to the extent of the excess liability insurance carried. The important point to note, however, is that this statutory framework applies only when the governmental entity obtains **liability insurance**, as stated by the plain language of the statute itself. The statute does not state that self-insured governmental entities may be sued for more than the liability limit, nor does it declare that governmental entities that choose to participate in risk-pooling agreements may be sued for amounts in excess of the liability limit. As we have observed, "[w]hatever the [L]egislature says in the text of the statute is considered the best evidence of the legislative intent." *Pegram v. Bailey*, 708 So. 2d 1307, 1314 (Miss. 1997). Moreover, this Court has never held that a governmental entity may be sued for amounts exceeding the statutory liability limit merely because that entity is part of a risk-sharing pool or is self-insured. Under the clear language of the statute, such a situation will arise only when a governmental entity carries liability insurance.

15

¶25.    The provisions of Miss. Code Ann. § 11-46-17(4), which set out the liability rules for governmental entities that obtain liability insurance, are inapposite where the risk-sharing agreement in question is properly characterized as self-insurance or a risk-sharing pool, which is the case here.  **Therefore, the statutory liability limit imposed by Miss. Code Ann. §11-46-15 is still effective to limit MMLP's liability at $50,000.  The learned chancellor erred in concluding that MMLP could be liable in this case for $5000,000.  In sum, the chancery court clearly erred in holding that MMLP is liable for the "policy limits" since Mississippi law caps municipal liability at $50,000 for acts or omissions occurring on or after July 1, 1993, but before July 1, 1997.**

## CONCLUSION

¶26.    We find that the chancellor erred in holding that the MMLP is liable for $500,000.  We also find that the Chancery Court of Smith County was without subject matter jurisdiction to hear this case.  Moreover, we find that the Mississippi Constitution does not prohibit reversal on jurisdictional grounds.  Furthermore, we find that the jurisdictional defect in the case sub judice is plain error requiring reversal.  We, therefore, reverse the judgment of the Chancery Court of Smith County, and we remand this case to that court for prompt transfer to the Circuit Court of Smith County for proceedings consistent with this opinion.  Upon remand the Chancery Court of Smith County shall also enter an appropriate order transferring to the Circuit Court of Smith County control of the funds in this case deposited in the registry of the court.

¶27.    **REVERSED AND REMANDED**.

16

**PITTMAN, C.J., WALLER, COBB AND CARLSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY EASLEY, J. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶28.   The chancery court had jurisdiction to hear this case under the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2002 & Supp. 2003). Notwithstanding my agreement that the policy in question is a form of a self-insurance plan, the majority has misinterpreted the MTCA in determining that liability here is capped at $50,000.  In addition, direct action against MMLP was proper in this case.  Accordingly, I dissent.

### *CHANCERY COURT JURISDICTION*

¶29.   The Legislature has not precluded the chancery courts from hearing MTCA cases. *See* Miss. Code Ann. § 11-46-13(1).  Therefore, for the reasons stated in detail in my dissents in *City of Ridgeland v. Fowler*, 846 So.2d 210, 214-19 (Miss. 2003) (McRae, P.J., dissenting), and *Lawrence County School District v. Brister*, 823 So.2d 459, 461-64 (Miss. 2001) (McRae, P.J., dissenting), the chancery court had jurisdiction to hear this case.

### *THE MMLP POLICY*

¶30.   At common law, the State and its subdivisions enjoyed complete immunity from suit through the judicial doctrine of sovereign immunity.  In 1982, this Court did away with judicial sovereign immunity in *Pruett v. City of Rosedale*, 421 So.2d 1046 (Miss. 1982).  As a result, the Legislature enacted Title 11, Chapter 46, commonly referred to as the Mississippi Tort Claims Act ("MTCA").  The MTCA provides sovereign immunity to the State and its

17

subdivisions and allows for a limited waiver of that protection if certain statutory requirements are met. Miss. Code Ann. §§ 11-46-3, 11-46-5, 11-46-11. The MTCA is the exclusive remedy of a claimant alleging injuries due to the negligence of the State or its political subdivisions and employees. Miss. Code Ann. § 11-46-7. The Act further sets out certain acts for which a government entity and its employees may never be held liable. Miss. Code Ann. § 11-46-9. Even if a political subdivision or government entity has waived sovereign immunity for a certain act of negligence, the MTCA still provides a limitation of liability thereby capping the amount of applicable damages for which it may be held liable. Miss. Code Ann. § 11-46-15.

¶31. Taylorsville is a political subdivision which falls under the protections of the MTCA. Miss. Code Ann. §§ 11-46-1(i), 11-46-3(1), 11-46-5(1), 11-46-7(1). All statutory requirements have been met, and Taylorsville does not contest any issue with regard to the plaintiffs' satisfaction of these statutory requirements. Miss. Code Ann. §§ 11-46-11(1), (2), (3), & (4). Immunity is waived to the extent of $50,000 for the negligent acts of Jones, a Taylorsville employee acting within the scope and course of employment. Miss. Code Ann. §§ 11-46-1(f); 11-46-5(1),(2), & (3); 11-46-9(1)(c); 11-46-15(1)(a). Taylorsville concedes that it is liable for $50,000.

¶32. However, as the majority states, the issue then turns on the MMLP policy because recovery in excess of $50,000 is still possible depending on the true character of the policy and the terms provided therein. Section 11-46-15 provides that "[**e]xcept as otherwise provided in Section 11-46-17(4)**, in any suit brought under the provisions of this chapter, if the verdict which is returned when added to costs and any attorney's fees authorized by law,

18

would exceed the maximum dollar amount of liability provided in subsection (1) of this section, the court shall reduce the verdict accordingly and enter judgment in an amount not to exceed the maximum dollar amount of liability provided in subsection (1) of this section." Miss. Code Ann. § 11-46-15(3) (emphasis added). It is this statement "**except as otherwise provided in Section 11-46-17(4)**" which creates to the present controversy. Miss. Code Ann. § 11-46-15(3) (emphasis added).

¶33. Section 11-46-17 provides for the creation of a Tort Claims Fund to cover claims made against government entities and subdivisions. Miss. Code Ann. § 11-46-17(1). However, this Section also gives municipalities and other government entities the option of opting out of the Tort Claims Fund and electing self-insurance, pooling agreements, and general liability insurance. Miss. Code Ann. § 11-46-17(3),(4), & (5). The applicable portions of Section 11-46-17 specifically provide:

> (3)     All political subdivisions shall, from and after October 1, 1993, obtain such policy or policies of insurance, establish such **self insurance reserves, or provide a combination of such insurance and reserves as necessary to cover all risks of claims and suits for which political subdivisions may be liable under this chapter**; except any political subdivision shall not be required to obtain pollution liability insurance. **However, this shall not limit any cause of action against such political subdivision relative to limits of liability under the Tort Claims Act.** Such policy or policies of insurance or such self-insurance may contain any reasonable limitations or exclusions not contrary to Mississippi state statutes or case law as are normally included in commercial liability insurance policies generally available to political subdivisions. All such plans of insurance and/or reserves shall be submitted for approval to the board. The board shall issue a certificate of coverage to each political subdivision whose plan of insurance and/or reserves it approves in the same manner as provided in subsection (2) of this section. Whenever any political subdivision fails to obtain the board's approval of any plan of insurance and/or reserves, the political subdivision shall act in accordance with the rules and

regulations of the board and obtain a satisfactory plan of insurance and/or reserves to be approved by the board.

(4) Any governmental entity of the state may **purchase liability insurance** to cover **claims in excess of the amounts provided for in Section 11-46-15 and may be sued by anyone is excess of the amounts provided for in Section 11-46-15 to the extent of such excess insurance carried; provided, however, that the immunity from suit above the amounts provided for in Section 11-46-15 shall be waived only to the extent of such excess liability insurance carried**.

(5) Any two or more political subdivisions are hereby authorized to enter into agreement and to contract between and among themselves for the purpose of polling their liabilities as a group under this chapter. **Such pooling agreements and contracts may provide for the purpose of one or more policies of liability insurance and/or the establishment of self-insurance reserves and shall be subject to approval by the board in the manner provided in subsection (2) and (3) of this section.**

Miss. Code Ann. § 11-46-17(3), (4), & (5) (emphasis added).

¶34. Taylorsville elected not to participate in the Tort Claims Fund and therefore chose to obtain a MMLP policy. The MMLP policy is not an ordinary liability insurance policy as provided for in Section 11-46-17(4). *See Perry v. Nationwide Gen. Ins. Co.*, 700 So.2d 600, 601 (Miss. 1997); *McCoy v. South Cent. Bell Tel. Co.*, 688 So.2d 214 (Miss. 1996). Since the policy is not per se "liability insurance", then it must be classified as either a form of "self-insurance or reserve" and/or "pooling agreement policy."

¶35. In *Morgan v. City of Ruleville*, 627 So.2d 275 (Miss. 1993), this Court addressed whether a City's participation in MMLP was a purchase of insurance sufficient to waive sovereign immunity under Miss. Code Ann. § 21-15-6. *Id.* at 280.[3] This Court found that the

_____

[3] From and after October 1, 1991, Section 21-15-6 was revised and now provides that "[m]unicipalities are hereby authorized in the discretion of the governing authorities, to purchase errors

20

MMLP policy was a form of "self insurance", therefore sovereign immunity was not waived under Section 21-15-6. *Id.* at 281. In so finding, this Court characterized the MMLP as a "risk-sharing pool." *Id.* (citing *Antiporek v. Village of Hillside*, 114 Ill.2d 246, 499 N.E.2d 1307 (1986); *Wesala v. City of Virginia*, 390 N.W.2d 285 (Minn. Ct. App. 1986)). ¶36.

However, at the time of the *Morgan* decision, the MTCA was not applicable since it did not take effect as to the liability of political subdivisions until "from and after October 1, 1993." Miss. Code Ann. § 11-46-5(1). This Court's characterization of the MMLP policy as "self insurance" was not in regards to those insurance options provided in Section 11-46-17. If we are to follow *Morgan* and find the MMLP policy in question to be "self insurance" and/or a "pooling agreement" then the present policy fits under the description of Section 11-46-17(3) or (5) which provides municipalities with the option to provide self insurance through reserves or a pooling agreement.

¶37. *Morgan* is applicable for the holding that a MMLP policy is not a private insurance policy. However, beyond that point *Morgan* and this case are different. Here we are dealing with a "self insurance" and/or "pooling agreement" which specifically lays out the terms of coverage which statutorily may provide for excess coverage over and above the $50,000 statutory liability. The language which specifically so provides for this excess is found in § 11-46-17(3) which states that "this shall not limit any cause of action against such political subdivision relative to limits of liability under the Tort Claims Act." This simple sentence

and omissions insurance for municipal officials and municipal employees."

21

proves that the Legislature contemplated and indeed did plan for instances where "self insurance" policies would provide for recovery being the $50,000 statutory limit.

¶38.    It is clear from precedent that the MMLP policy is a form of "self-insurance" As such, the maximum statutory liability of $50,000 under the MTCA does not operate as a cap when the applicable policy provides for payment beyond the $50,000.

### *DIRECT ACTION AGAINST INSURANCE COMPANY*

¶39.    The majority concludes that direct action may not be maintained against MMLP in this case because the question is not coverage, but the extent of coverage.  However, if it looks like a duck and it walks like a duck and quacks like a duck, I dare say it is indeed a duck.  This is a question of coverage and, therefore, is a proper basis for a direct action pursuant to M.R.C.P. 57.

¶40.    The comment to Rule 57 states that:

> The two principal criteria in favor of rendering declaratory judgments are: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

*Titan Indem. Co. v. Williams*, 743 So.2d 1020, 1023 (Miss. Ct. App. 1999) (quoting M.R.C.P. 57 cmt.).

¶41.    The case at bar fits squarely within these criteria.  The majority characterizes MMLP's argument as simply one of the extent of coverage.  However, this is not a case where an insurer is accepting coverage, but claiming that the policy limit would be met.  Nor is this a case where an insurer is accepting coverage but waiting to see the amount of damages set by the jury.

¶42. Instead, here an insurer is claiming that despite a policy limit of $500,000, the Mississippi Tort Claims Act relieves it from paying in excess of $50,000. Such a determination fits within the criteria established for Rule 57, and a direct action in this case was proper.

¶43. One final point bears mentioning. I am disheartened that the majority is so inclined to let the defendant in this case to have its cake and eat it too. In one breath the majority tells us that the defendant is not an insurance company and, therefore, it may not be treated as such. Thus, the $50,000 statutory cap may not be exceeded.

¶44. However, in the next breath the majority does an about face and tells us that the defendant is entitled to the same treatment as an insurance company and, therefore, a direct action was improper. These two conclusions are contradictory.

¶45. If the defendant is an insurer, then the statutory cap is inapplicable. However, if the defendant is not an insurer, then it is not guaranteed the same benefits of an insurer and a direct action may be maintained.

¶46. For these reasons, I would affirm the chancery court's judgment and remand this case for further proceedings in the chancery court.

¶47. Accordingly, I dissent.