MICHAEL YACCINO, Plaintiff, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Cross-Plaintiff-Appellant (Intergovernmental Risk Management Agency, Defendant and Cross-Defendant-Appellee; Guadalupe Alba *et al.*, Defendants).—MICHAEL YACCINO, Plaintiff-Appellee, v. INTERGOVERNMENTAL RISK MANAGEMENT AGENCY *et al.*, Defendants-Appellants (Guadalupe Alba *et al.*, Defendants).

Second District    Nos. 2—02—1247, 2—02—1248 cons.

Opinion filed February 5, 2004.

Robert W. Rohm and John R. Adams, both of Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago, for appellant State Farm Mutual Automobile Insurance Company.

Russell W. Hartigan and Patrick H. O'Connor, both of Hartigan & Cuisinier, P.C., of Chicago, for Intergovernmental Risk Management Agency and City of West Chicago.

JUSTICE CALLUM delivered the opinion of the court:

Plaintiff, Michael Yaccino, sought a declaratory judgment (735 ILCS 5/2—701 (West 2002)) specifying whether defendant and cross-plaintiff-appellant, State Farm Mutual Automobile Insurance Company's (State Farm's) and defendant and cross-defendant-appellee, Intergovernmental Risk Management Agency's (IRMA's) uninsured motorist coverages were primary or excess. State Farm filed a cross-claim against IRMA, seeking a declaration that IRMA's uninsured motorist coverage was primary and that State Farm's was excess. Upon cross-motions for summary judgment (735 ILCS 5/2—1005 (West 2002)) on State Farm's cross-claim and on part of plaintiff's complaint, the trial court found that State Farm's coverage was primary and IRMA's was excess, and it granted IRMA and the City of West Chicago's motion. In appeal number 2—02—1247, State Farm appeals that order.

Upon subsequent cross-motions for summary judgment addressing the extent of IRMA's coverage, the trial court found, *inter alia*, that Officer Michael Beamish was not a necessary party to the litigation, and it granted plaintiff's and State Farm's motions and denied IRMA and West Chicago's motion. In appeal number 2—02—1248, IRMA and West Chicago appeal the trial court's finding that Officer Beamish was not a necessary party.

We affirm in appeal number 2—02—1247, and we dismiss appeal number 2—02—1248 as moot.

I. BACKGROUND

In his complaint, plaintiff alleged that, on December 18, 1999, he occupied a police vehicle that was stopped facing south off of Route 59 in West Chicago. The police vehicle was owned by West Chicago and insured by IRMA. Codefendant Guadalupe Alba was driving a vehicle owned by codefendant Veronica Flores. The vehicle operated by Alba, which was traveling south on Route 59, left the roadway and struck the police vehicle occupied by plaintiff, resulting in personal injuries to plaintiff. The Alba vehicle was uninsured.

State Farm had issued to plaintiff an automobile insurance policy. The policy provides, in relevant part:

"UNINSURED MOTOR VEHICLE—COVERAGE U

You have this coverage if 'U' appears in the 'Coverages' space on the declarations page.

We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be sustained by an insured and caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

* * *

UNINSURED MOTOR VEHICLE—COVERAGE U1 (Damages for Bodily Injury or Property Damage Caused by Uninsured Motor Vehicles)

You have this coverage if 'U1' appears in the 'Coverages' space on the declarations page.

We will pay damages for:

1. bodily injury an insured is legally entitled to collect from the owner or operator of an uninsured motor vehicle; and

2. property damage an insured is legally entitled to collect:

a. as the result of actual physical contact of an uninsured motor vehicle with your car or a newly acquired car, and

b. if the owner or operator of the at-fault uninsured motor vehicle is identified.

The bodily injury must be sustained by an insured. The bodily injury or property damage must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

* * *

If There Is Other Uninsured Motor Vehicle Coverage—Coverages U and U1

1. If uninsured motor vehicle coverage for bodily injury is available to an insured from more than one policy provided by us or *any other insurer*, the total limit of liability available from all policies provided by *all insurers* shall not exceed the limit of liability of the single policy providing the highest limit of liability. This is the most that will be paid regardless of the number of policies involved, persons covered, claims made, vehicles insured, premiums paid or vehicles involved in the accident.

2. Subject to item 1 above, any coverage applicable under this policy shall apply:

a. on a primary basis if the insured sustains bodily

injury while occupying your car, or while not occupying a motor vehicle or trailer.

b. on an excess basis if the insured sustains bodily injury while occupying a vehicle not owned by or leased to you, your spouse or any relative." (Emphasis added.)

IRMA, a pool of self-insured municipalities, had issued to West Chicago a coverage document effective January 1, 1999, through December 31, 1999. Section IV of the "Business Auto Coverage Form" of the IRMA document, which is entitled "Business Auto Conditions," provides in relevant part:

"5. Other Insurance

a. For any covered 'auto' you own, this Coverage Form provides primary coverage. For any covered 'auto' you don't own, the coverage provided by this Coverage Form is excess over any other collectible insurance.

\* \* \*

d. When this Coverage Form and any other insurance policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Coverage of our Coverage Form bears to the total of the limits of all the Coverage Forms and insurance policies covering on the same basis."

A section entitled "Illinois Uninsured Motorists Coverage" (uninsured motorist amendment), which amends the "Business Auto Coverage Part," provides in relevant part:

"A. Coverage

1. We will pay all sums the 'Member' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'Member' caused by an 'accident.' The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the 'uninsured motor vehicle.' "

A "member" is defined as "Anyone \* \* \* 'occupying' a covered 'auto.' "

A section entitled "Changes in Conditions" in the uninsured motorist amendment provides, in relevant part:

"The CONDITIONS are changed for UNINSURED MOTORISTS COVERAGE as follows:

1. OTHER INSURANCE is replaced by the following:

For any covered 'auto' you own, this Coverage Form provides primary coverage. For any covered 'auto' you don't own, the coverage provided by this Coverage Form is excess over any other collectible primary uninsured motorists coverage.

If this Coverage Form and any other insurance policy providing

similar coverage apply to the same 'accident,' the maximum limit of coverage under all Coverage Forms or insurance policies shall be the highest applicable limit of coverage under any one Coverage Form or policy.

When this Coverage Form and any other insurance policy cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Coverage of our Coverage Form bears to the total of the limits of all the Coverage Forms and insurance policies covering on the same basis."

"Amendment #10," also called the "Other Insurance Amendment," amends the "Business Auto Coverage Form." It provides:

"Section IV—#5 Other Insurance wording of the Business Auto Coverage Form is replaced by the following:

This self-insurance pool (IRMA) shall not cover a loss which is insured by a commercial insurance policy, except on an excess basis. The placement of commercial insurance by a Member, either as a Named Insured or as an Additional Insured, shall not cause this self-insurance pool (IRMA) to be construed as providing concurrent primary coverage to the 'Member'.

This self-insurance pool shall always be deemed excess over commercial insurance, whether primary, excess, pro rata, contingent or any other basis. Since we shall always be deemed excess, we shall have no duty to defend any claim or suit where a commercial insurer has a duty to defend. If a commercial insurer shall refuse to defend a 'Member's' claim or suit, we will undertake the defense and be entitled to the 'Member's' rights against such insurer. Since we shall always be excess over commercial insurance, we shall pay only our share of the amount of a 'Member's' loss, if any, that exceeds the sum of:

(i) the total amount that commercial insurance would pay for such loss in the absence of this self-insurance pool; and

(ii) the total amount of such 'Member's' deductible (and any self-insurance).

A commercial insurer shall have no claim or rights against this self-insurance pool. The foregoing is subject to the coverage document terms and Member Aggregate limits."

On July 12, 2002, the trial court granted summary judgment for IRMA and West Chicago on part of plaintiff's complaint and on State Farm's cross-claim against IRMA. Relying on *Aetna Casualty & Surety Co. of Illinois v. James J. Benes & Associates, Inc.*, 229 Ill. App. 3d 413 (1992), and *Antiporek v. Village of Hillside*, 114 Ill. 2d 246 (1986), the trial court found that State Farm's coverage was primary and IRMA's was excess because IRMA does not constitute a private insurance carrier. The court did not rule upon the extent of IRMA's excess coverage.

Subsequently, State Farm, IRMA, West Chicago, and plaintiff moved for summary judgment on the issue of the extent of IRMA's uninsured motorist coverage. In their motion, IRMA and West Chicago alleged that Officer Michael Beamish was a necessary party to the action. On October 15, 2002, the trial court granted plaintiff's and State Farm's motions for summary judgment and denied IRMA and West Chicago's motion for summary judgment. It found that IRMA's policy provides $1 million in uninsured motorist coverage per accident and that Officer Beamish was not a necessary party to the litigation.

In appeal number 2—02—1247, State Farm appeals the trial court's July 12, 2002, order denying its summary judgment motion and granting IRMA and West Chicago's motion. In appeal number 2—02—1248, IRMA and West Chicago appeal the court's October 15, 2002, order denying IRMA and West Chicago's motion for summary judgment and granting State Farm's and plaintiff's motions.

## II. STANDARD OF REVIEW

■ Summary judgment is appropriate only where there is no genuine issue of material fact and the pleadings, depositions, and affidavits show that the moving party is entitled to a judgment as a matter of law. *Farm Bureau Mutual Insurance Co. v. Alamo Rent A Car, Inc.*, 319 Ill. App. 3d 382, 386 (2000). The construction of terms contained in an insurance policy is a question of law appropriate for summary judgment disposition. *Continental Casualty Co. v. McDowell & Colantoni, Ltd.*, 282 Ill. App. 3d 236, 241 (1996). Summary judgment orders are reviewed *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

## III. ANALYSIS

### A. Appeal Number 2—02—1247

■ In appeal number 2—02—1247, State Farm argues that IRMA's coverage is primary and that State Farm's coverage is excess. It contends that the "other coverage" clause in its policy should be read to include IRMA's form of self-insurance. State Farm then suggests that certain provisions in the IRMA document be interpreted as providing primary coverage. IRMA responds that, as it provides a form of self-insurance, the "other coverage" clause in the State Farm policy is inapplicable and therefore State Farm's policy provides primary coverage to Yaccino.

We examine first the uninsured motorist provisions in State Farm's policy. The "other coverage" provision provides as follows:

"If There Is Other Uninsured Motor Vehicle Coverage—Coverages U and U1

1. If uninsured motor vehicle coverage for bodily injury is available to an insured from more than one policy provided by us or *any other insurer*, the total limit of liability available from all policies provided by *all insurers* shall not exceed the limit of liability of the single policy providing the highest limit of liability. This is the most that will be paid regardless of the number of policies involved, persons covered, claims made, vehicles insured, premiums paid or vehicles involved in the accident.

2. Subject to item 1 above, any coverage applicable under this policy shall apply:

a. on a primary basis if the insured sustains bodily injury while occupying your car, or while not occupying a motor vehicle or trailer.

b. on an excess basis if the insured sustains bodily injury while occupying a vehicle not owned by or leased to you, your spouse or any relative." (Emphasis added.)

State Farm argues that, regardless of whether IRMA's coverage is insurance or not, clause 2.b. in the foregoing provision applies and State Farm provides excess uninsured motorist coverage for Yaccino's claim. We disagree with State Farm's interpretation of the provision. The provision clearly addresses cases where there is other uninsured motor vehicle coverage. The first paragraph of that provision explains that "other coverage" means coverage that is available from other insurers. It then discusses the total limit of liability. The second paragraph of the provision addresses when State Farm's coverage will be primary and when it is excess, subject to paragraph 1. State Farm essentially suggests that we read the second paragraph in a vacuum and ignore the preceding paragraph's definition of other uninsured coverage. We decline to read the paragraph in this way and choose instead to read it in the context of the entire provision, which addresses other uninsured coverage. Accordingly, reading the provision as a whole, it is clear to us that paragraph 2 is operative only if the other uninsured coverage is provided by a policy issued by an insurer. Thus, we must determine if IRMA constitutes an insurer.

Relying on *Antiporek* and *Aetna*, as did the trial court, IRMA maintains that self-insurance is not insurance and thus State Farm's "other coverage" clause is not operative. In those cases, as we discuss below, the courts relied on the distinction between commercial insurance and self-insurance and the public policy interest in protecting public funds.

In *Antiporek*, the supreme court held that membership in IRMA amounts to pooled self-insurance of governmental entities that share risks and costs of civil liabilities and does not operate as waiver of municipal tort immunity. *Antiporek*, 114 Ill. 2d at 251-52. In that case,

the plaintiff sued a municipality that was a member of IRMA, alleging negligence when her daughter was injured while sledding on property owned and maintained by the municipality. The village raised immunity as an affirmative defense.

The plaintiff argued that IRMA is analogous to an insurance company because participants must pay a premium in consideration for indemnification from IRMA on the occurrence of enumerated perils. The supreme court rejected that argument. The court noted that IRMA's participants have not shifted the risk to for-profit risk takers, but have instead decided to share the risk among themselves. IRMA's governing documents require supplemental contributions from all members, including those that have submitted no claims. Moreover, because there are no private investors or nongovernmental participants, there is no danger that private persons will receive an unconscionable profit by accepting premiums while asserting immunities to avoid claims. Thus, because the court found that "the substance of IRMA is pooled self-insurance," it held that the municipality's immunities were not waived by its participation in IRMA. *Antiporek*, 114 Ill. 2d at 251-52.

In *Aetna*, this court considered whether IRMA had the same obligation to contribute to the settlement of a claim as a commercial insurer. Pursuant to its request, a municipality was added as an additional insured under a general contractor's commercial general liability policy with Aetna. The estate of a deceased employee of the general contractor sued the municipality. Aetna paid for the municipality's defense. IRMA provided risk management services to the municipality. Aetna sought a declaration that it was entitled to reimbursement from IRMA for one-half of the defense and settlement payments made by Aetna on behalf of the municipality in the underlying suit. IRMA refused.

The trial court denied Aetna's motion for summary judgment and granted IRMA's cross-motion for summary judgment. Relying on *Antiporek*, this court affirmed, holding that IRMA is not and should not be treated as a private insurance carrier. *Aetna*, 229 Ill. App. 3d at 421. We rejected Aetna's argument that *Antiporek* was restricted to the issue of a municipality's waiver of governmental immunity and that IRMA functions as an insurance company for purposes of equitable contribution by providing risk protection. We concluded that *Antiporek* was not so limited and relied on the distinction the *Antiporek* court made between commercial insurance and self-insurance and the public policy interest in protecting public funds and property.

State Farm suggests that *Aetna* and *Antiporek* were limited to the issues of tort immunity and equitable contribution. We do not read

them in such a limited manner. The *Antiporek* court's distinction between commercial insurance and self-insurance and its reliance on the public policy interest in protecting public funds are as valid in this context as they were in the earlier cases.

Next, State Farm maintains that *Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange*, 325 Ill. App. 3d 970 (2001), is instructive. In that case, a staff physician of a city hospital was sued for malpractice. Two policies potentially covered the claim: the hospital's self-insurance coverage with Chicago Hospital Risk Pooling Plan (CHRPP) and the physician's professional liability policy with Illinois State Medical Inter-Insurance Exchange (ISMIE). ISMIE administered a trust whereby participating nonprofit hospitals pooled certain risks associated with the treatment and care provided to their patients.

Because the claim arose from his employment at the hospital, the physician selected CHRPP to respond to this loss, pursuant to Illinois's selective tender rule. Subsequently, CHRPP sought equitable contribution from ISMIE. ISMIE argued that the insured's selective tender barred the contribution action. The Appellate Court, First District, noted that an insured has a paramount right under the selective tender rule to choose or knowingly forgo an insurer's participation in a claim. While it acknowledged that the trust funds are not insurance, the court held that CHRPP provided the same service as traditional carriers and therefore it was bound by the same common law obligations imposed upon such carriers, including the obligation to honor the insured's decision to forgo other potentially available coverage. *Chicago Hospital Risk Pooling Program*, 325 Ill. App. 3d at 978-79. Examining the trust agreement, the court further noted that it resembled an insurance contract. Accordingly, it held that CHRPP should be treated the same as a traditional insurer for purposes of applying common-law insurance principles as they relate to coverage issues. *Chicago Hospital Risk Pooling Program*, 325 Ill. App. 3d at 978-79. Where CHRPP had a concurrent obligation to cover the physician's risk, the physician had the right to select his CHRPP coverage to the exclusion of his ISMIE coverage. Thus, CHRPP's status as a risk-pooling trust did not defeat application of the selective tender rule. *Chicago Hospital Risk Pooling Program*, 325 Ill. App. 3d at 980.

Addressing whether CHRPP could state a cause of action for equitable contribution against ISMIE, the court noted that a "true" self-insured does not share an identity of insurable interests and risks with a traditional insurance carrier because it has chosen to retain its risk rather than shift any of that risk to a commercial carrier. Therefore, there can be no equitable contribution from or to the com-

mercial carrier. *Chicago Hospital Risk Pooling Program*, 325 Ill. App. 3d at 982. However, distinguishing *Aetna* and other cases, the court found significant the presence of an "other insurance" clause in the CHRPP document. *Chicago Hospital Risk Pooling Program*, 325 Ill. App. 3d at 983. This indicated to the court that CHRPP sought to share the risk of loss with a commercial carrier when they had coincidental coverage, and therefore to transform its coverage into something other than pure self-insurance. Accordingly, the court held that CHRPP's status as a risk-pooling trust did not defeat its cause of action for contribution. *Chicago Hospital Risk Pooling Trust*, 325 Ill. App. 3d at 983.

State Farm maintains that, because the IRMA coverage document resembles an insurance contract, this court should utilize the analysis in *Chicago Hospital Risk Pooling Trust* and hold that IRMA be treated like a commercial insurer. We disagree. We believe that the public policy considerations discussed in *Antiporek* and *Aetna*, as we discussed above, are determinative. Such considerations were not present in *Chicago Hospital Risk Pooling Trust* because the hospitals, although nonprofit institutions, were not public entities and, therefore, there was no risk that public funds would be expended to pay claims.

Having determined that IRMA should not be treated as an insurer for purposes of giving effect to the "other coverage" clause in State Farm's policy, we must turn to the policy's uninsured coverage provisions. The section that describes the coverages labeled "U" and "U1" provides that State Farm's policy will pay damages for bodily injury and property damage that an insured is entitled to collect from the owner or operator of an uninsured vehicle. Therefore, as is apparent from this language, where the "other coverage" clause in State Farm's policy is not operative, State Farm provides primary coverage.

We turn next to the IRMA document's uninsured motorist provisions. Three provisions are relevant: one in the main document—the business auto coverage provision—and two amendments that modify the main document provision. The business auto coverage provision states that IRMA provides primary coverage for any member-owned auto. Two amendments modify this provision: (1) the uninsured motorist amendment, which addresses only uninsured motorist coverage and states, as does the business auto coverage provision, that IRMA provides primary coverage for any member-owned auto; and (2) amendment No. 10, which provides that IRMA's coverage "shall always be deemed excess over commercial insurance." State Farm argues that the amendments conflict and that the only way they can be reconciled is to read the uninsured motorist amendment as controlling for uninsured motorist coverage because it specifically addresses such coverage. We disagree.

State Farm's argument is based on the assumption that one amendment necessarily completely trumps the other. In the absence of policy language to that effect, we do not read the provisions as State Farm suggests. Essentially, State Farm's reading of IRMA's document renders amendment No. 10 superfluous in all uninsured motorist cases. There is no language in the IRMA document indicating to us that it should be read in such a limited way. We conclude that amendment No. 10 does not directly conflict with the uninsured motorist amendment because it states that, in cases where there is other "commercial insurance," IRMA's coverage shall "always" be deemed excess. We read the word "always" to include uninsured motorist scenarios otherwise addressed by the uninsured motorist amendment. Thus, read together, the uninsured motorist amendment and amendment No. 10 provide that, in uninsured motorist cases where there is other commercial insurance, as is the case here, IRMA's coverage is excess. In an uninsured motorist scenario, for example, where there is other *noncommercial* insurance, amendment No. 10 would not apply, and the uninsured motorist amendment's provision that IRMA provides primary coverage would control. We believe that this reading of the IRMA document is the only reasonable interpretation because it gives full effect to both amendments.

For the reasons stated above, we affirm the trial court's July 12, 2002, order granting IRMA and West Chicago's motion for summary judgment and denying State Farm's motion.

### B. Appeal Number 2—02—1248

In appeal number 2—02—1248, IRMA and West Chicago appeal the trial court's October 15, 2002, order. In that order, the trial court determined that IRMA's policy provides $1 million in uninsured coverage per accident and that Officer Beamish is not a necessary party. On appeal, IRMA and West Chicago argue solely that Officer Beamish is a necessary party.

■ Before addressing this argument, we must consider whether this appeal should be dismissed as moot. The existence of an actual controversy is a prerequisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 523 (2001). An appeal is considered moot where it presents no actual controversy or where the issues have ceased to exist. *Richardson v. Rock Island County Officers Electoral Board*, 179 Ill. 2d 252, 256 (1997).

■ We conclude that whether Officer Beamish is a necessary party is moot. In their motion for summary judgment, IRMA and West Chicago argued that the trial court could not decide the extent of

excess coverage unless Officer Beamish was made a party to the action. In their response to State Farm's motion for summary judgment, IRMA and West Chicago again asserted that the trial court could not issue a "binding" order addressing the coverage limit because a necessary party had not been added to the case. On appeal, IRMA and West Chicago do not challenge the trial court's ruling that IRMA provides $1 million in uninsured motorist coverage. They argue only that Officer Beamish is a necessary party and request that we vacate that aspect of the trial court's ruling and remand the cause for further proceedings. Additionally, they now assert that the amount of coverage issue and the necessary party issue are independent. However, IRMA and West Chicago are precluded on appeal from asserting a position inconsistent with one they took in the trial court. See, *e.g.*, *Auton v. Logan Landfill, Inc.*, 105 Ill. 2d 537, 543 (1984). Thus, because IRMA and West Chicago's request to add Officer Beamish as a necessary party was made in the context of the extent of coverage, and because that coverage issue was resolved by the trial court and has not been appealed, we conclude that IRMA and West Chicago's appeal is moot. Accordingly, we dismiss the appeal.

## IV. CONCLUSION

For the foregoing reasons and with respect to appeal number 2—02—1247, the judgment of the circuit court of Du Page County is affirmed. Appeal number 2—02—1248 is dismissed.

No. 2—02—1247, Affirmed.

No. 2—02—1248, Appeal dismissed.

BOWMAN and GILLERAN JOHNSON, JJ., concur.