# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*State Farm Mutual Automobile Insurance Co. v. Du Page County*, 2011 IL App (2d) 100580

| | |
|---|---|
| Appellate Court Caption | STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff, v. DU PAGE COUNTY and DU PAGE COUNTY STATE'S ATTORNEY'S OFFICE, Defendants-Appellees (State Farm Fire and Casualty Company, Plaintiff-Appellant; Frank Radostits, as Independent Executor of the Estate of Jane E. Radostits, Deceased, Defendant). |
| District & No. | Second District<br>Docket No. 2–10–0580 |
| Filed | June 16, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an automobile accident that occurred when a county employee was driving a county vehicle while intoxicated and crossed the center line and crashed into plaintiff's insured, the trial court's denial of plaintiff's motion for judgment on the pleadings and granting the county's motion to dismiss was affirmed, since the county was self-insured and was not a "carrier," it did not have a "policy of insurance" and it was not primarily liable to an insured for a loss under a policy of insurance for purposes of equitable subrogation, the public policy of protecting government funds applied, and based on the fact that plaintiff could not show that the county was a primary insurance carrier, the principle of horizontal exhaustion requiring an insured to exhaust all available primary insurance before any excess insurance was implicated did not apply, especially when the county vehicle plaintiff's insured was driving was not covered by the automobile policies issued to plaintiff's insureds and plaintiff's umbrella policy provided primary coverage with regard to the loss at issue. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 08–MR–1374; the Hon. Kenneth L. Popejoy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael Resis, Glen E. Amundsen, Richard T. Valentino, and Ellen L. Green, all of SmithAmundsen LLC, of Chicago, for appellant. |
| | James G. Sotos, Elizabeth A. Ekl, and Jeffrey N. Given, all of James G. Sotos & Associates, Ltd., for appellees. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Hutchinson and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1    In this case, plaintiff State Farm Fire & Casualty Company (State Farm) sought equitable subrogation and reimbursement from defendant Du Page County (County), a self-insured municipality, after State Farm settled a lawsuit. The lawsuit alleged that an employee of the County struck and injured another driver while the employee was intoxicated and driving a vehicle owned by the County. State Farm appeals the trial court's denial of its motion for judgment on the pleadings and granting of the County's motion to dismiss. On appeal State Farm argues that: (1) the trial court erred by denying State Farm's motion for judgment on the pleadings, because State Farm was entitled to equitable subrogation and reimbursement against the County; and (2) the County was required to pay a settlement within the $2 million retained limit of its insurance program, under principles of horizontal exhaustion. We affirm.

¶ 2                                    I. FACTS

¶ 3                               A. Car Accident

¶ 4    On May 11, 2007, the County's employee, Jane Radostits, was killed when she was involved in a car accident with Michelle Lubinski, who was injured. At the time of the accident, Jane was deputy chief of the criminal prosecutions bureau in the Du Page County

State's Attorney's office. She was driving a 2003 Impala, owned by the County, an Illinois municipality. After her death, Jane's husband, Frank Radostits, was appointed independent executor of her estate (Jane's estate).

¶ 5                              B. The Lubinski Lawsuit

¶ 6     Lubinski filed a complaint, followed by a first amended complaint (complaint), against Jane's estate, the County, and Joseph Birkett, Du Page County State's Attorney. Lubinski alleged that, during the morning of the day of the accident, certain Du Page County complex buildings were evacuated as a result of a bomb threat. Shortly after the evacuation, Jane left the complex with her supervisor, Jeffrey Kendall, to take care of personal errands together in the Wheaton area.

¶ 7     Lubinski's complaint also alleged that Kendall contacted other members of the Du Page County State's Attorney's office and told them of plans to go to the Kona Grill in Oak Brook for lunch and drinks. Kendall drove Jane in his County-owned vehicle to the Kona Grill, arriving sometime before 11:30 a.m. By 12:45 p.m., seven other members of the Du Page County State's Attorney's office joined Kendall and Jane at the Kona Grill. Jane drank between four and seven lemon martinis and one beer between 11:30 a.m. and 3 p.m. After witnessing Jane consume numerous intoxicating drinks, and knowing that Jane was intoxicated, Kendall drove Jane to the County-owned 2003 Impala, which was parked in the Du Page County complex lot. As Jane drove home, she used a Du Page County cell phone to call Kendall and discuss an upcoming court proceeding.

¶ 8     The complaint alleged that Jane then tried to make another cell phone call. At about the same time, Jane crossed into oncoming traffic on Winfield Road and struck Lubinski's vehicle. Jane was traveling over 80 miles per hour in a 45-mile-an-hour zone. At the time of the accident, Jane had a blood alcohol concentration of 0.25, over three times the Illinois legal limit. Lubinski suffered multiple catastrophic injuries due to the accident.

¶ 9     Count III of Lubinski's complaint alleged "negligence, *respondeat superior*," against Birkett in that Jane was acting within the scope of her employment and that Birkett was liable for Jane's negligence in violating her driving duties. Count III also alleged that Birkett was liable for Kendall's actions because he was acting within the scope of his employment when he negligently entrusted Jane to drive. Birkett denied liability.

¶ 10    Count IV of Lubinski's complaint alleged "willful and wanton misconduct, *respondeat superior*," against Birkett for the actions of both Jane and Kendall. Birkett denied liability.

¶ 11    Jane's estate filed a counterclaim and/or third-party complaint against the County and Birkett. The County and Birkett denied that Jane's estate was entitled to such relief.

¶ 12                             C. Insurance Policies

¶ 13    At the time of the accident the Radostitses were named insureds on three car insurance policies issued by State Farm Mutual Automobile Insurance Company (State Farm car policies). These three State Farm car policies did not provide coverage for the 2003 Impala. Also, at the time of the accident, the Radostitses were named insureds on a personal liability

umbrella policy issued by State Farm (State Farm umbrella policy).

¶ 14    The State Farm umbrella policy provided:

"1. **Coverage L - Personal Liability.** If you are legally obligated to pay damages for a **loss**, we will pay your **net loss** minus the **retained limit**. Our policy will not exceed the amount shown on the **Declarations** as Policy Limits – Coverage L – Personal Liability."

" '**[N]et loss**' means:

a. the amount you are legally obligated to pay as damages for **bodily injury, personal injury** or **property damage**; and

b. All reasonable expenses you incur in the investigation, settlement and defense of a claim or suit at our request[.]"

" '**[R]etained limit**' means:

a. the total limits of liability of your underlying insurance[.]"

"**Other Insurance.** This policy is excess over all other valid and collectible insurance."

¶ 15    At the time of the accident, the County was a self-insured municipality with a retained limit up to $2 million, pursuant to section 9–103 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/9–103 (West 2006)). In excess of the $2 million retained self-insurance, the County also had an insurance policy issued by Lexington Insurance Company, with a limit of liability of $20 million, in excess of $10 million in liability coverage under a policy issued by Everest National Insurance Company.

¶ 16                    D. Settlement of the Lubinski Lawsuit

¶ 17    Lubinski settled her claims against Jane's estate, with State Farm paying $400,000 on behalf of Jane's estate. Lubinski and Jane's estate settled their claims against the County and Birkett, with the County paying Lubinski $100,000. Jane's estate, the County, and Birkett released all claims they had or could have had against each other, without any admission of liability by any party and without affecting State Farm's impending declaratory judgment claims in this case. The entire Lubinski lawsuit was dismissed with prejudice on August 4, 2009.

¶ 18                E. State Farm's Complaint for Declaratory Judgment

¶ 19    On September 14, 2009, State Farm filed its four-count second amended complaint for declaratory judgment (State Farm's complaint), which alleged that the County was self-insured up to $2 million and had insurance in excess of the $2 million self-insurance. Count I, titled "Declaratory Judgment (Car Policies)," sought a declaration that State Farm had no liability for coverage of Lubinski's injuries or damages under the State Farm car policies issued to Jane. Count II, titled "Declaratory Judgment (Personal Liability Umbrella Policy)," sought a declaration that State Farm had no liability under its umbrella policy.

¶ 20    Count III, titled "Equitable Subrogation," alleged the following. The 2003 Impala and

Jane were covered by the County's self-insurance. The County's insurance was primary to any coverage provided by the State Farm umbrella policy and, as a result, the County owed a duty to defend and indemnify Jane's estate in the Lubinski lawsuit. State Farm sought a declaration that it was entitled to recoup $400,000 from the County for the settlement it paid to Jane's estate.

¶ 21    Count IV, titled "Reimbursement," sought a declaration that the County owed Jane's estate a duty to defend against the Lubinski lawsuit and owed State Farm reimbursement for defense costs of $45,128.56.

¶ 22    In its answer, the County denied that: (1) counts I and II applied to the County; (2) either the 2003 Impala or Jane was covered by the County's self-insurance; (3) the County bore any financial liability for or responsibility to Jane's estate; (4) the County owed a duty to defend or indemnify Jane's estate; (5) the County's self-insurance was "valid or collectible insurance" for purposes of State Farm's umbrella policy's "other insurance" provision; (6) State Farm was entitled to recover $400,000 from the County in connection with the settlement of the Lubinski lawsuit; and (7) the County must reimburse State Farm for its defense costs. The County also raised affirmative defenses, including that Jane was not acting within the scope of her employment at the time of the accident.

¶ 23                              F. Cross-Motions

¶ 24    In November 2009, the County filed a motion to dismiss pursuant to section 2–615(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2–615(a) (West 2008)) and State Farm filed a motion for judgment on the pleadings pursuant to section 2–615(e) of the Code (735 ILCS 5/2–615(e) (West 2008)). The County sought dismissal with prejudice of counts III and IV of State Farm's complaint. State Farm sought entry of judgment in its favor on all counts of its complaint.

¶ 25                           G. Trial Court's Rulings

¶ 26    The trial court ruled as follows: regarding count I, titled "Declaratory Judgment (Car Policies)," the trial court granted State Farm's motion, ruling that its car policies did not provide coverage for the 2003 Impala; regarding count II, titled "Declaratory Judgment (Personal Liability Umbrella Policy)," the trial court denied State Farm's motion. State Farm later voluntarily dismissed this count.

¶ 27    Regarding counts III and IV, titled "Equitable Subrogation" and "Reimbursement," respectively, the trial court denied State Farm's motion, ruling that there were genuine issues of material fact precluding judgment on the pleadings in State Farm's favor, particularly as to whether Jane was acting within the scope of her employment at the time of the accident. However, the trial court granted the County's motion as to counts III and IV, ruling that State Farm could not meet the elements of equitable subrogation or reimbursement.

¶ 28    State Farm filed a timely notice of appeal, appealing the trial court's dismissal of counts III and IV and denying judgment on the pleadings to State Farm on the same counts.

¶ 29                                    II. ANALYSIS

¶ 30       On appeal State Farm argues that the trial court erred by denying judgment on the
pleadings to State Farm and granting judgment to the County. State Farm's motion for
judgment on the pleadings related to its equitable-subrogation and reimbursement counts. A
motion seeking judgment on the pleadings pursuant to section 2–615 of the Code is like a
motion for summary judgment, but it is limited to the pleadings. *Pekin Insurance Co. v.
Wilson*, 237 Ill. 2d 446, 455 (2010). Judgment on the pleadings is proper where the pleadings
disclose that there is no genuine issue of material fact and that the movant is entitled to
judgment as a matter of law. *Pekin*, 237 Ill. 2d at 455. A section 2–615 motion to dismiss,
on the other hand, should be granted where the plaintiff can prove no set of facts that would
entitle him to recover. *King v. Senior Services Associates, Inc.*, 341 Ill. App. 3d 264, 266
(2003). To resolve a motion on the pleadings, a court must "consider as admitted all well-
pleaded facts set forth in the pleadings of the nonmoving party, and the fair inferences drawn
therefrom." (Internal quotation marks omitted.) *Pekin*, 237 Ill. 2d at 455. A complaint
includes exhibits, such as contracts, that are attached to it. *American Family Mutual
Insurance Co. v. W.H. McNaughton Builders, Inc.*, 363 Ill. App. 3d 505, 511 (2006). We
review *de novo* a trial court's decision on a section 2–615 motion. See *Heastie v. Roberts*,
226 Ill. 2d 515, 530-31 (2007). We now consider whether the trial court erred by denying
State Farm judgment on its equitable-subrogation and reimbursement counts and by
dismissing those counts.

¶ 31                              A. Equitable Subrogation

¶ 32       State Farm argues that it is entitled to equitable subrogation against the County. The
County counters that State Farm cannot establish that it is entitled to equitable subrogation,
because the County is not an insurer. For the reasons set forth below, we agree with the
County.

¶ 33       Equitable subrogation is a remedial device that prevents unjust enrichment. *American
Family Mutual Insurance Co. v. Northern Heritage Builders, L.L.C.,* 404 Ill. App. 3d 584,
588 (2010). The right of equitable subrogation arises when a party pays a debt for which
another is primarily liable and that in equity and good conscience should have been
discharged by the latter. See *North American Insurance Co. v. Kemper National Insurance
Co.,* 325 Ill. App. 3d 477, 481 (2001). Like subrogation in general, it is a device where a
party who pays a debt or claim of another succeeds to the rights of the other with respect to
the debt or claim the party paid. See *North American Insurance Co.*, 325 Ill. App. 3d at 481.

¶ 34       A plaintiff insurance carrier claiming a right to equitable subrogation must establish that:
(1) the defendant carrier is primarily liable to the insured for a loss under a policy of
insurance; (2) the plaintiff carrier is secondarily liable to the insured for the same loss under
its policy; and (3) the plaintiff carrier discharged its liability to the insured and, at the same
time, extinguished the liability of the defendant carrier. *Home Insurance Co. v. Cincinnati
Insurance Co.,* 213 Ill. 2d 307, 323 (2004).

¶ 35       Regarding the first requirement, State Farm argues that the County is primarily liable for
the settlement that State Farm paid to Lubinski. The County argues that it is not primarily

liable, because it is a self-insured municipality.

¶ 36    While Illinois courts have decided closely related issues, this precise issue is one of first impression. *Antiporek v. Village of Hillside*, 114 Ill. 2d 246 (1986), *Aetna Casualty & Surety Co. of Illinois v. James J. Benes & Associates, Inc.*, 229 Ill. App. 3d 413 (1992), and *Yaccino v. State Farm Mutual Automobile Insurance Co.*, 346 Ill. App. 3d 431 (2004), all discuss a pool of self-insured municipalities known as "IRMA."[1]

¶ 37    In *Antiporek*, our supreme court held that IRMA is essentially self-insurance. *Antiporek*, 114 Ill. 2d at 250. In *Antiporek*, the plaintiff filed a complaint against the Village of Hillside, alleging that the plaintiff's daughter was injured when she slid on property owned and maintained by the village. The trial court entered judgment for the plaintiff although the village raised the affirmative defense of immunity pursuant to the Act. *Antiporek,* 114 Ill. 2d at 248. When the plaintiff filed her complaint, the Act granted certain immunities to local public entities but such immunities were waived if an entity was protected by a "policy of insurance" issued by an insurance "company" (Ill. Rev. Stat. 1983, ch. 85, par. 9–103(c)). *Antiporek,* 114 Ill. 2d at 247. The appellate court reversed. The supreme court affirmed the appellate court, holding that a municipality's participation in IRMA did not result in a waiver of immunity from tort liability, because IRMA was "tantamount" to self-insurance. The court, explaining the purpose behind the immunity waiver rule, stated that, in the case of commercial insurance, "the immunity is waived since government funds are no longer in jeopardy and immunity would inure to the benefit of private investors who have assumed the risk of insurers." *Antiporek,* 114 Ill. 2d at 250. However, "when a municipality self-insurers [*sic*], it bears all risks itself, and settlements or awards are paid directly from government coffers." *Antiporek*, 114 Ill. 2d at 250. The court then held: "IRMA provides a totally different type of protection–one tantamount to self-insurance within the meaning of section 9–103." *Antiporek*, 114 Ill. 2d at 250. Thus, the village had not waived its immunities from the plaintiff's lawsuit. *Antiporek*, 114 Ill. 2d at 251.

¶ 38    Next, this court held that IRMA, a pool of self-insured municipalities, did not have the same obligation to contribute to a settlement as a commercial carrier, because IRMA was not a private insurance carrier. *Aetna*, 229 Ill. App. 3d at 421. Citing *Antiporek*, we stressed the importance of IRMA's purpose of preserving government funds. *Aetna*, 229 Ill. App. 3d at 420.

¶ 39    Subsequently, we held that IRMA, which issued business automobile coverage to the City of West Chicago, was not an "insurer." *Yaccino*, 346 Ill. App. 3d at 440. Therefore, the uninsured motorist (UM) coverage provided by a commercial carrier to its insured, rather than the UM coverage provided by IRMA, was the primary coverage for injuries suffered by the insured when he was struck by an uninsured vehicle while in a city police car. *Yaccino*, 346 Ill. App. 3d at 440. Again, we relied on public policy interests in protecting public funds. *Yaccino*, 346 Ill. App. 3d at 440.

¶ 40    In this case, the County is a self-insured municipality. The holdings of *Antiporek, Aetna*, and *Yaccino* and the courts' reasoning provided therein lead us to the conclusion that the

_____

[1]The "Intergovernmental Risk Management Agency." *Aetna*, 229 Ill. App. 3d at 413.

County, like IRMA, is not an insurer or an insurance company, nor does it provide insurance coverage. Accordingly, State Farm cannot establish the first requirement of equitable subrogation, which is that the defendant must be a *carrier* that is primarily liable to the insured for a loss under a policy of insurance.

¶ 41     We recognize, and State Farm notes, that *Antiporek*, *Aetna*, and *Yaccino* address IRMA, a *pool* of self-insured municipalities and not a lone self-insured municipality like the County in this case. However, the public policy of protecting government funds is greater served in this case than in the IRMA cases. The risk to a single municipality is greater than that to a pool of many. Thus, public policy supports the conclusion that a self-insured municipality is not an insurer or an insurance company and, therefore, not a carrier of insurance.

¶ 42     Further, State Farm cannot establish that the County was liable to itself for a loss under *a policy of insurance*. An insurance policy is a contract requiring two parties, an insurer and an insured. Self-insurance does not involve an insurer and an insured, because they are one and the same. See *Pritza v. Village of Lansing*, 405 Ill. App. 3d 634, 644 (2010). Thus, government self-insurance does not include a policy of insurance. See *Pritza*, 405 Ill. App. 3d at 644. Because State Farm cannot establish that the County is a "carrier" and that it had a "policy of insurance," State Farm cannot establish the first requirement of equitable subrogation.

¶ 43     State Farm argues that the public policy rationale of *Antiporek, Aetna,* and *Yaccino* does not apply here, because the County chose to "privately insure risks above a retained limit" by purchasing excess insurance to cover liabilities beyond its $2 million self-insurance. The County wrongly asserts that this argument has been forfeited because State Farm raises it for the first time on appeal. State Farm raised this argument in its response to the County's motion to dismiss; thus, we will address this argument here. The distinction that State Farm makes does not diminish the importance of the public policy rationale expressed in *Antiporek, Aetna,* and *Yaccino* to this case. State Farm's complaint acknowledged that the County was self-insured up to $2 million and that State Farm sought only $445,128.56 from the County. Although the County secured private insurance above its retained self-insurance limit of $2 million, the $445,128.56 sought by State Farm did not approach the County's retained self-insurance limit. Therefore, State Farm sought only government funds. Thus, the public policy rationale of protecting such funds, expressed in *Antiporek, Aetna,* and *Yaccino*, is applicable to this case. However, if the amount involved in the settlement had exceeded the County's self-insurance limit and the County's commercial insurers had become involved, then State Farm arguably would have been seeking nongovernment funds and the circumstances might have been different.

¶ 44     State Farm cites *Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange* (*CHRPP*), 325 Ill. App. 3d 970 (2001), to support its argument that this case is not like *Antiporek, Aetna*, or *Yaccino*, because the County shifted risks above $2 million to commercial excess carriers. *CHRPP* is distinguishable from the case at bar. In *CHRPP*, the appellate court held that a risk management pool for hospitals was not pure self-insurance and thus could seek equitable subrogation from a private insurance carrier. *CHRPP*, 325 Ill. App. 3d at 983. In *CHRPP* the court did not consider the public policy rationale discussed in *Antiporek*, *Aetna*, and *Yaccino,* "because the hospitals, although

nonprofit institutions, were not public entities and, therefore, there was no risk that public funds would be expended to pay claims" (*Yaccino*, 346 Ill. App. 3d at 440). In this case, State Farm seeks subrogation from the County in an amount that would come entirely from public funds. Thus, *CHRPP* is distinguishable based on the fundamental fact that government funds were not implicated.

¶ 45                                          B. Horizontal Exhaustion

¶ 46        Next, State Farm argues that the County was required to pay a settlement within the $2 million retained limit of its "insurance program," under principles of horizontal exhaustion.

¶ 47        The general principle of horizontal exhaustion requires an insured to exhaust all available primary insurance before any excess insurance may be invoked. *State Automobile Mutual Insurance Co. v. Habitat Construction Co.*, 377 Ill. App. 3d 281, 293 (2007). Thus, an excess carrier need not contribute to a settlement until the limits of a primary insurance carrier are exhausted. *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.,* 227 Ill. 2d 102, 115 (2007).

¶ 48        In this case, State Farm fails to recognize that the County is a self-insured municipality and, therefore, it is not an insurer, a provider of an insurance policy, or a carrier for any purpose. See *Aetna*, 229 Ill. App. 3d at 422. Accordingly, State Farm cannot establish that the County is a primary insurance carrier such that the principle of horizontal exhaustion applies to this case.

¶ 49        State Farm argues that Illinois courts have treated self-insurance as primary insurance for purposes of horizontal exhaustion. State Farm cites the following cases to support its argument: *Missouri Pacific R.R. Co. v. International Insurance Co.*, 288 Ill. App. 3d 69 (1997), *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 283 Ill. App. 3d 630 (1996), and *United States Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598 (1994). These cases are distinguishable because each involves private or commercial entities or pools, not public entities or pools. This is a distinction of paramount importance for public policy reasons already discussed above, *i.e.*, the importance of protecting government funds.

¶ 50        State Farm also argues that its coverage was excess. To support this argument, State Farm asserts that, under its umbrella policy, the Radostitses had a duty to maintain three underlying car insurance policies at all times, and one of the umbrella policy conditions stated that the umbrella coverage was "excess over all other valid and collectible insurance."

¶ 51        An insurance policy is a contract and its construction is a question of law, which we review *de novo*. See *Barth v. State Farm Fire & Casualty Co.,* 228 Ill. 2d 163, 174 (2008). If the words in a contract are unambiguous, we must give them their plain and ordinary meaning. See *Barth,* 228 Ill. 2d at 174.

¶ 52        The State Farm umbrella policy provided:

    "You [the Radostitses] agree that the underlying insurance policies listed below:

    (1) Are in full force and will be continued in force for at least the limits shown.

    (2) Insure all land motor vehicles and watercraft owned by, rented by, or regularly furnished to you."

The "Required Underlying Insurance Policies" are "Automobile Liability," "Recreational Motor Vehicle Liability Including Passenger Bodily Injury," "Personal Residential Liability Coverage," and "Watercraft Liability." The State Farm umbrella policy provided, "When shown on the **Declarations** as 'REQUIRED UNDERLYING INSURANCE POLICIES', these terms are defined as follows: ***." The State Farm umbrella policy then contained the following definition: " 'AUTOMOBILE LIABILITY' means *your* policy ***." (Emphasis added.)

¶ 53    The policy also provided, "**Other Insurance.** This policy is excess over all other valid and collectible insurance."

¶ 54    Thus, the State Farm umbrella policy establishes that the "underlying insurance" was other insurance that State Farm required the Radostitses to acquire, including liability insurance for motor vehicles regularly furnished to them. The parties agree that the Radostitses did acquire the three State Farm car policies; however, the County-owned 2003 Impala that Jane was driving during the accident was not listed on any of the declaration pages of these car policies. Thus, the parties also agree that the three State Farm car policies did not cover the loss at issue. Because the County was not an insurer and the State Farm car policies did not provide coverage, there was no "other valid and collectible insurance." Accordingly, the State Farm umbrella policy was primary and not excess. We also note that, because State Farm's umbrella policy was primary and not excess, State Farm cannot establish either the first or the second requirement of equitable subrogation.

¶ 55    In addition, although State Farm does not develop its argument regarding reimbursement, we note that it cannot establish that it was "an excess insurer called upon to make payments that should have been made by [the] primary insurers." *Schal Bovis, Inc. v. Casualty Insurance Co.*, 315 Ill. App. 3d 353, 360-61 (2000). Thus, the trial court properly dismissed State Farm's claim seeking reimbursement. See *Schal Bovis*, 315 Ill. App. 3d at 360-61.

¶ 56                    C. The County's Payment to Lubinski

¶ 57    State Farm also argues that the County's payment of $100,000 to Lubinski was made on its own behalf and did not release Jane's estate. State Farm argues that, therefore, "[h]aving made a payment, the County Defendants should not now be heard to deny responsibility for their employee when their liability was predicated on her fault in causing the accident." State Farm does not develop this argument, nor does it cite to any authority to support this argument. Thus, we consider it forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008); see also *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 493 (2002) (an issue not clearly defined or supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(h)(7) and is forfeited on appeal).

¶ 58    State Farm also argues in this section of its brief that the "County's insurance program" must be considered "underlying insurance" because the underlying three State Farm car policies issued to the Radostitses covered the County-owned 2003 Impala. Therefore, according to State Farm, the "County Defendants remained primarily liable for the loss." This is circular and conclusory reasoning. As we have already determined, because the County was not an insurer and the State Farm car policies did not provide coverage, there

was no "other valid and collectible insurance." Accordingly, the State Farm umbrella policy was primary coverage.

¶ 59      For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 60      Affirmed.