2016 IL App (1st) 143336
No. 1-14-3336
February 2, 2016

SECOND DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ILLINOIS MUNICIPAL LEAGUE RISK MANAGEMENT ASSOCIATION, as Assignee and Subrogee of the Village of Lynwood and Roel Valle, | ) ) ) ) | Appeal from the Circuit Court Of Cook County. |
| | ) | No. 11 CH 32393 |
| Plaintiff-Appellant, | ) | |
| | ) | The Honorable |
| v. | ) ) | David B. Atkins, Judge Presiding. |
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois Mutual Insurance Company, | ) ) ) ) | |
| Defendant-Appellee. | ) | |

JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1     This case involves the interplay between an umbrella insurance policy and a contract for pooled self-insurance. The trial court found enforceable a clause in the umbrella policy that made its coverage apply only after exhaustion of the limits of all applicable "insurance and self insurance." The self-insurance pool appeals, arguing that the umbrella policy should count as

primary insurance because the self-insurance pool uses public funds. We find the umbrella policy enforceable as written, and therefore we affirm the trial court's order.

¶ 2                                    BACKGROUND

¶ 3        State Farm Fire & Casualty Company issued an insurance policy to Roel Valle, who worked as the city clerk for the Village of Lynwood. Lynwood belonged to the Illinois Municipal League Risk Management Association (Association), a municipal risk-pooling organization.

¶ 4        On February 4, 2011, a car owned by Lynwood and driven by Valle collided with a car driven by Manuel Little. Little sued Valle and Lynwood. Valle and Lynwood notified the Association and State Farm about the lawsuit. The Association invited State Farm to participate in the defense of the lawsuit and settlement negotiations. On August 16, 2011, the Association agreed to pay Little and his passengers a total settlement amount of $5,822,500 for a release of all their claims against Valle and Lynwood. State Farm did not contribute to the settlement amount. The Association, as subrogee of Valle and Lynwood, then filed the lawsuit at issue before this court, alleging that State Farm breached its contract by failing to contribute its policy limits to the settlement. Both parties presented their contracts to the court and moved for summary judgment.

¶ 5        State Farm's insurance policy, titled "Personal Liability Umbrella Policy," required Valle to purchase automobile liability insurance and other forms of primary insurance. The policy states, "Other Insurance. The coverage provided by this policy is excess over all other insurance and self insurance."

¶ 6     The Association's contract with Lynwood provided that the Association would pay on Lynwood's behalf "all sums which [Lynwood] shall become legally obligated to pay *** because of 'bodily injury' *** to which this form applies, caused by an 'occurrence' and arising out of the ownership, maintenance or use *** of any 'automobile,' " up to a limit of $8 million. The contract required Lynwood to notify the Association of any occurrence, and the contract established the Association's right and duty to defend Lynwood. The contract did not require Lynwood or its employees to purchase any underlying insurance to make its coverages come into effect.

¶ 7     The Association admitted that the contract expressly covered the liability of Lynwood and "any other person while using an 'owned automobile' *** with the permission of [Lynwood]," but not "the owner of a 'non-owned automobile.' " The Association also admitted that Valle, as an employee of Lynwood permitted to drive Lynwood's automobile, qualified as a person covered under the Association's contract with Lynwood. The contract included the following clause:

> "Other Coverage Or Insurance: If any other valid and collectible coverage, whether by commercial insurance, self-insurance or other funding mechanism, applicable to any loss or expense covered by the Association is available to the Members, the coverage afforded by the Association shall be in excess of and shall not contribute with such other coverage."

¶ 8     The trial court found that the Association, by contract, agreed to pay the liability of Lynwood and Valle, up to the contract limits of $8 million, and State Farm's umbrella policy provided coverage for the accident only if the liability exceeded $8 million. Because the

Association settled the lawsuit for less than $8 million, the trial court held that State Farm owed the Association nothing. The trial court entered a judgment in favor of State Farm. The Association now appeals.

¶ 9                                              ANALYSIS

¶ 10        We review *de novo* the order granting a motion for summary judgment. *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL 114811, ¶ 15. State Farm's provision concerning "Other Coverage Or Insurance" appears to conflict with the "Other Insurance" clause in the Association's contract. The appellate court considered a somewhat similar conflict in *Illinois Emcasco Insurance Co. v. Continental Casualty Co.*, 139 Ill. App. 3d 130 (1985), which also involved an automobile accident. In *Emcasco*, Kolber was driving King's car, with King's permission, when he was involved in an accident in which his two passengers suffered injuries. Continental insured King under an umbrella policy which, like State Farm's policy here, required King to purchase underlying primary automobile insurance. Emcasco insured Kolber, under a policy that made its insurance " 'excess over any valid and collectible insurance' " whenever Kolber drove a car he did not own. *Emcasco*, 139 Ill. App. 3d at 132.

¶ 11        The appellate court said:

> "There are various recognized differences in general between an umbrella policy
> and a primary policy containing an excess insurance clause and specifically
> between the policies before us. Instead of examining the individual other
> insurance clauses, we believe we must construe the policies as a whole and the
> underlying policy considerations.

First, an umbrella policy, in contrast to a primary policy that contains an other insurance clause, has been recognized as providing unique and special coverage. The synonym 'catastrophe' that is used to identify this type of policy supports this assertion. (See 8A Appleman, Insurance Law & Practice sec. 4906 (1981).) Umbrella or catastrophe coverage has been defined as '*** [A] needed form of coverage which picks up, above the limits of all other contracts, such as automobile and homeowners coverages, to give the security and peace of mind so necessary today where jury verdicts, or court awards, may be very substantial, to discharge the unexpected, but potentially bankrupting, judgment.'

'The courts are not ignorant of [these] desirable socio-economic consequences attendant upon the providing of umbrella or catastrophe coverages.' 8A Appleman, Insurance Law & Practice sec. 4906, at 348; sec. 4909.85, at 452 (1981).

***

*** [T]he [Continental] policy remains an umbrella policy in all instances except under limited circumstances where the policy provides for primary coverage. The Emcasco policy, however, provides primary coverage in almost all regards. In only one instance, namely, with respect to a judgment involving a nonowned automobile, does the Emcasco policy provide excess coverage. Moreover, unlike the Emcasco policy, a condition to coverage under the [Continental] policy was the procurement of underlying insurance coverage, which in this case was supplied by State Farm.

For these reasons, we believe that the two policies cannot be considered on the same level nor can the general rules regarding excess and escape clauses be applied. Rather, taken as a whole, we find that the umbrella policy issued by [Continental] should be required to contribute only after the limits of the Emcasco policy have been reached. We are in agreement with the Appleman treatise on insurance where, in discussing 'other insurance' clauses, he states: 'There is, however, a unique form of excess contract which always remains excess over and above all other applicable forms of contract, except as to the specific risks upon which it may elect to carry the primary burden. That is the umbrella or catastrophe policy. *** [U]mbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses.' 8A Appleman, Insurance Law & Practice sec. 4906, at 348; sec. 4909.85, at 453-54 (1981)." *Emcasco*, 139 Ill. App. 3d at 132-34.

¶ 12    Here, State Farm issued an umbrella liability policy to Valle. The Association provided primary coverage to Lynwood. Thus, if we treat the Association's contract with Lynwood as an insurance policy, the umbrella policy would provide coverage only if Valle's liability exceeded the limits of the Association's coverage. See *Emcasco*, 139 Ill. App. 3d at 132-34.

¶ 13    But the Association's contract is not an insurance policy. In *Antiporek v. Village of Hillside*, 114 Ill. 2d 246 (1986), our supreme court held that a contract like the Association's contract with Lynwood "is pooled self-insurance, through formal agreement, of governmental entities which share the risks and costs of civil liabilities." *Antiporek*, 114 Ill. 2d at 251.

Lynwood and other participating municipalities form "a risk-management pool in which only Illinois municipalities may participate." *Antiporek*, 114 Ill. 2d at 247-48. The *Antiporek* court held that municipalities that participate in such risk-management pools do not waive municipal immunities from liability. *Antiporek*, 114 Ill. 2d at 250-52.

¶ 14    The Association argues that this court should not apply the reasoning of *Emcasco* here because (1) the Association's contract with Lynwood does not qualify as "other insurance and self insurance" within the meaning of State Farm's policy, and (2) even if the contract could qualify as self-insurance, the court should, on grounds of public policy, refuse to enforce that clause and instead permit the municipality to recover from State Farm.

¶ 15    Under *Antiporek*, the Association's contract with Lynwood qualifies as a kind of "pooled self-insurance." *Antiporek*, 114 Ill. 2d at 251. The Association asks us to limit the interpretation of "self-insurance" in State Farm's policy to privately-funded self-insurance risk pools. See *Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange*, 325 Ill. App. 3d 970 (2001) (*CHRPP*). When we construe insurance policies, we must "ascertain and give effect to the intentions of the parties as expressed by the words of the policy." *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 371 (2007). We see no grounds to believe State Farm or Valle intended to limit the reach of the other insurance clause in the manner the Association suggests. We construe the umbrella policy to provide insurance coverage only when the loss exceeded available limits of insurance and self-insurance, including pooled self-insurance.

¶ 16    The Association relies primarily on *State Farm Mutual Automobile Insurance Co. v. Du Page County*, 2011 IL App (2d) 100580, for its argument that we should require State Farm to

7

pay to the Association the limits of State Farm's umbrella policy. In *Du Page County*, Radostits, a county employee, drove a county-owned car into another car. State Farm covered Radostits under an umbrella policy that provided it was " 'excess over all other valid and collectible insurance.' " *Du Page County*, 2011 IL App (2d) 100580, ¶ 14. The county insured itself for all losses up to $2 million, with any greater liability covered by an excess insurance policy. *Du Page County*, 2011 IL App (2d) 100580, ¶ 15. State Farm sought to recover from the county $400,000, the amount State Farm paid to Radostits's heirs, plus $100,000 for the amount State Farm paid to cover Radostits's liability to another person injured in the accident. *Du Page County*, 2011 IL App (2d) 100580, ¶¶ 20, 57.

¶ 17    The *Du Page County* court applied the reasoning of *Aetna Casualty & Surety Co. of Illinois v. James J. Benes & Associates, Inc.*, 229 Ill. App. 3d 413 (1992), in which the appellate court held that the Intergovernmental Risk Management Agency (IRMA), "a pool of self-insured municipalities *** was not a private insurance carrier." *Du Page County*, 2011 IL App (2d) 100580, ¶ 38. The *Du Page County* court held that "the County, like IRMA, is not an insurer or an insurance company, nor does it provide insurance coverage." *Du Page County*, 2011 IL App (2d) 100580, ¶ 40. Because the county did not qualify as an insurer, it could not count as a primary insurer. The *Du Page County* court distinguished *CHRPP*, in which the court treated a risk-management pool like an insurer, on grounds that private money funded the risk-management pool in *CHRPP*, while public funds would pay all losses the county covered under its self-insurance plan. But the *Du Page County* court emphasized that "[a]n insurance policy is a contract ***. [Citation.] If the words in a contract are unambiguous, we must give them their plain and ordinary meaning." *Du Page County*, 2011 IL App (2d)

8

100580, ¶ 51. The court added, "because the County was not an insurer and the State Farm car policies did not provide coverage, there was no 'other valid and collectible insurance.' " *Du Page County*, 2011 IL App (2d) 100580, ¶ 58.

¶ 18     We find State Farm's umbrella policy here unambiguous. The policy makes the insurance "excess over all other insurance and self insurance." Because the Association provides coverage for the accident here under the contract for pooled self-insurance, we find that the Association provided coverage for the losses up to $8 million, and State Farm's policy would cover losses in excess of that amount. Because the Association settled the claims for less than $8 million, State Farm did not owe the Association any reimbursement for the loss.

¶ 19                                    CONCLUSION

¶ 20     The Association's contract with Lynwood qualifies as self-insurance within the meaning of the other insurance clause in State Farm's umbrella liability policy. Public policy does not make the State Farm contract unenforceable. The trial court correctly held that State Farm's umbrella policy provided coverage only if the damages exceeded the limits of other available self-insurance. Because the damages here did not exceed those limits, the trial court correctly entered judgment in favor of State Farm.

¶ 21     Affirmed.